Jerome BROWN, Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., as Secretary of the Department of Health and Human Services, Defendant–Appellee.

No. 1132, Docket 89–6271.

United States Court of Appeals, Second Circuit.

Argued April 5, 1990.

Decided June 4, 1990.

---

William W. Berry, Legal Services for the Elderly, Disabled, or Disadvantaged of Western New York, Inc., Buffalo, N.Y., for plaintiff-appellant.

Lynda Guild Simpson, Deputy Asst. Atty. Gen., Office of Legal Counsel, argued, Stuart M. Gerson, on the brief, Washington, D.C., Asst. U.S. Atty. Gen. Civ. Div. (Dennis C. Vacco, U.S. Atty.; William G. Kanter and Michael J. Singer, Attys., Appellate Staff, Civ. Div., Dept. of Justice, of counsel), for defendant-appellee.

Before KAUFMAN and WALKER, Circuit Judges and LEVAL, District Judge.*

LEVAL, District Judge:

This appeal challenges the constitutionality of the Social Security Act's provision for deductions from old-age insurance benefits on account of excess earnings, 42 U.S.C. § 403(b). Under this provision as it stood in 1983, a beneficiary who continued to work after reaching retirement age, up to the age of 70, would suffer a reduction of benefits of $1 for every $2 earned (above a specified exempt amount).[1] We find no merit in plaintiff's contentions and affirm the district court's dismissal of the action.

### Background

Plaintiff-appellant Jerome Brown applied for Social Security retirement benefits on October 19, 1983, shortly after his 65th birthday. He went to the local Social Security office, where a Claims Representative interviewed him and assisted him in completing his application. Brown told the Claims Representative that he planned to retire from his employment early in 1984. A statement appears on Brown's application, filled in by the Claims Representative upon information furnished by Brown, that he would not earn over $6,960 during 1984.[2]

Brown's Social Security application also states in capital letters, "I agree to file an annual report of earnings. The annual report is required by law and failure to report may result in a monetary penalty." Brown's signature appears on the page below the statement.

At the time of the interview, Brown was given a printed information sheet. That sheet stated that if his earnings were over $6,600, the Social Security Administration might deduct $1 for every $2 earned above that amount. Brown also received two claim receipts, one for himself and one for his wife. The claims receipts included a section entitled, "Changes to be Reported and How to Report." That section provided that "Work Changes," including wage levels, must be reported to the SSA "at once," by telephone, mail, or in person.

Contrary to his expressed intention to retire in 1984, Brown did not retire until June, 1985. During 1984, he earned $25,173. Brown did not report his earnings for 1984 to the Social Security Administration

---

* The Honorable Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation.

1. When plaintiff Jerome Brown applied for Social Security benefits in 1983, 42 U.S.C. §§ 403(b) and 403(f)(3) (1982) provided in relevant part:

 § 403(b). *Deductions on account of work*
 Deductions ... shall be made from any payment under this subchapter ... until the total of such deductions equals—
 (1) such individual's benefit or benefits under section 402 of this title for any month ... if for such month he is charged with excess earnings under the provisions of subsection (f) of this section....
 § 403(f)(3).
 ... an individual's excess earnings for a taxable year shall be 50 per centum of his earnings for such year in excess of the applicable exempt amount ... Notwithstanding the previous provisions ... no part of the excess earnings shall be charged to any month ... in which such individual was age seventy or over....

 The current version of the statute provides that excess earnings will result in a reduction of benefits of $1 for every $3 earned (above the exempt amount).

2. Although Brown cannot now recall making this statement to the Claims Representative, he does recall being told by the Claims Representative that if he earned more than a particular amount, his Social Security checks would be reduced. However, Brown also claims he was told by the Representative that his Social Security checks would be automatically adjusted based on his employer's quarterly report.

until July 1985. He collected full Social Security retirement benefits in 1984, and his wife also received benefits during that time. Benefit overpayments to the Browns for 1984, according to the Secretary, amount to $8,485.80.[3]

In April, 1986, the Social Security Administration requested a refund of the overpayments and assessed a late filing penalty. Brown requested a waiver of recovery of the overpayment. That request was denied. He then requested a hearing before an Administrative Law Judge.

On May 15, 1987, the ALJ found, pursuant to 20 C.F.R. § 404.507, that Brown was not "without fault" in causing the benefit overpayments. Accordingly, the ALJ denied waiver of recovery of the overpayments. The Appeals Council of the Social Security Administration affirmed the ALJ's decision on August 16, 1988.[4]

Brown then brought action under 42 U.S.C. § 405(g) in Federal District Court for the Western District of New York before Judge Richard J. Arcara to review the Secretary's determination. He advanced two arguments: first, that the excess earnings provisions of the Act, 42 U.S.C. §§ 403(b), 403(f)(3) deprive him of equal protection of the laws; and second, that the Secretary's determination that Brown was not without fault was unfounded. The district judge rejected both claims.

## Discussion

### I. *The Level of Scrutiny*

 Distinctions made in social welfare statutes are typically reviewed for rational basis. *See, e.g., Lyng v. International Union*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988) (statutory provision barring a household from becoming eligible from food stamps when a member of the household goes on strike upheld on rational basis test); *City of Cleburne v. Cleburne*

*Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 *reh'g denied* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970) (upholding AFDC program limitations). It is the responsibility of Congress, not the courts, to determine how public funds should be spent and how they should be raised. Such legislative decisions are constrained by fiscal necessity. Every desirable program cannot be funded, nor can the full needs of every funded program be met. Lines must inevitably be drawn, and it is the legislature's province to draw them. The choices made by the legislature will be upheld unless they are "clearly wrong, a display of arbitrary power, not an exercise of judgment." *Bowen v. Owens*, 476 U.S. 340, 345, 106 S.Ct. 1881, 1885, 90 L.Ed.2d 316 (1986) (quoting *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976)). The standard of review for such statutes is to determine whether they have a rational basis and do not engage in invidious discrimination, regardless whether flaws may be found in their logic. *Dandridge*, 397 U.S. at 486, 90 S.Ct. at 1162.

*Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), cited by appellant, is not to the contrary. In *Jimenez*, the Court struck down a statutory provision denying Social Security disability benefits to certain illegitimate children on the grounds that "the blanket ... exclusion ... is [not] reasonably related to the prevention of spurious claims," the government's ostensible objective. 417 U.S. at 637, 94 S.Ct. at 2502.

Appellant contends, however, that because the excess earnings deduction discriminates on the basis of wealth and because it burdens the right to work, it must

---

**3.** The Administration has adjusted the benefit overpayment figures to account for its failure to appropriately increase the Browns' monthly benefit payments in 1985 and 1986.

**4.** The Appeals Council did conclude that the ALJ had erred by relying on the wrong regulation,

and that the ALJ should have based his conclusions on 20 C.F.R. § 404.510 and § 404.511. Applying the correct standard, the Appeals Council still concluded that Mr. Brown was not "without fault," and that recovery of the overpayments could not be waived.

pass a higher standard of scrutiny than rational basis. Although conceding that strict scrutiny is not warranted, he advocates a "heightened" scrutiny test. *See Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (heightened scrutiny exercised over a Wisconsin statute which interfered with the "fundamental" right to marry).

He argues first that heightened scrutiny is warranted because the statute impinges on the right to work for pay. Assuming *arguendo* that the right to sell one's labor is fundamental, *see Hampton v. Mow Sun Wong,* 426 U.S. 88, 103, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976), the statute does not directly and substantially interfere with it. It places no legal barriers in front of those who wish to work for pay. Although it reduces the net benefits of working for pay, it by no means eliminates them. Heightened scrutiny is not warranted for this reason.

Appellant's second argument, that the statute must be subjected to heightened scrutiny because it discriminates based on wealth, is also without merit. The Act does not distinguish between the rich and poor. The earned income of both is taxed identically. Appellant's complaint is with the statute's failure to also reduce the benefits of beneficiaries who receive passive income. The gist of plaintiff's argument is that the statute must be reviewed with heightened scrutiny for *failing* to discriminate based on wealth. In other words, those who have more should pay more or receive less. If appellant's argument were accepted, every governmental charge from court filing fees, to car registration charges, to fishing licenses, to sales tax would be suspect unless it were scaled to means. There is no such rule. Heightened scrutiny is not warranted on this basis.

## II. *Rational Justification*

■ Appellant contends it is irrational to tax wages while failing to tax earnings from dividends and interest. He argues that the excess earnings charge discriminates irrationally against those who lack invested wealth, requiring them to bear more than their fair share of the burden of financing the Social Security system, or depriving them of their fair share of benefits.

The argument is based on the supposition that the system of benefits derives its justification from the goal of providing (at retirement age) for the needy. That is not the case. H.R.Rep. No. 615, 74th Cong., 1st Sess. 1 (1935). The program is rather a forced participation in retirement insurance in which wages are taxed to finance guaranteed retirement benefits. Eligibility is not based on need. Indeed, the needy are ineligible to receive benefits unless they have contributed sufficiently by working for a specified minimum number of quarters in employment subject to the Social Security tax. Benefits are payable to wealthy beneficiaries equally with the needy. Further, benefits are not funded by contributions based on wealth or unearned income. They are funded by taxes imposed on wages (and other equivalent earned income). *See* 42 U.S.C. § 401(a). In short, the Social Security old age retirement insurance system is not based on the system of values presupposed in plaintiff's irrationality argument.

■ The purpose of the old age benefits provisions is to provide workers and their families with payments at an age when their earnings are likely to diminish by reason of old age or illness. *See Mathews v. de Castro,* 429 U.S. at 186, 97 S.Ct. at 434–35. The resources to provide such insurance are limited. The excess earnings charge is an economy measure which is rationally related to the objectives of the statute. It recognizes that workers are able to, and do, postpone their retirements, thus postponing the income loss against which benefits are intended to provide. It thus relates benefits more directly to actual retirement than to a presumed time of retirement.

There is further rational justification for not taxing income from investments. To do so might well discourage savings during productive years. If workers perceived that frugality and thrift would ultimately deprive them of the benefits they would

otherwise receive, that would encourage spendthrift habits. It is certainly rational to design benefits legislation so as not to encourage such consequences. *See Gainville v. Richardson*, 319 F.Supp. 16, 19 (D.Mass.1970).

■ Appellant further argues that Section 403(f)(3), which exempts individuals over 70 from the earned income charge, is an illegal age discrimination. There is simply no constitutional basis for this argument. Nor is there statutory authority. Not even the Age Discrimination Act outlaws discrimination *in favor* of the elderly. *See* 42 U.S.C. §§ 6101–6107. The Social Security system is designed on age-based distinctions, with eligibility for benefits beginning only at a specified age. Numerous other statutes, including Medicaid and many welfare provisions, serve the purpose of aiding persons over a stated age.

Even if discrimination in favor of the aged were considered suspect, the over–70 exemption at issue would be justified by its objectives. First, just like the principal provisions of the Social Security system, the exemption serves to protect the elderly. If those favored by the exemption have continued to work past age 65, they are likely to have contributed a larger amount to the Social Security system than younger individuals, having thus earned a greater entitlement to receive benefits. They are more likely to have actually retired than 65–year olds, and they will also be employable for a shorter future period of time than younger counterparts. They are closer to facing costly health problems as their age advances. They are less likely to be self-sufficient and more likely to be experiencing financial burdens than at 65. Finally, because working persons over 70 are a far less numerous class than working persons over 65, removal of the charge only for those over 70 will have a less harmful impact on the goal of economizing.

Appellant further argues that the exemption for individuals over 70 undermines an intended goal of the excess earned income charge for those under 70. The charge in question was originally designed (in part) to encourage retirement at 65 so as to free jobs for younger workers. H.R.Rep. No. 702, 95th Cong., 1st Sess., pt. I at 49 (1977), *reprinted* in 1977 U.S.Code Cong. & Admin.News 4155, 4206. The elimination of the charge many years later for those over 70 has the contrary tendency of encouraging workers over 70 to work.

■ This may be so. A complex statute, especially one that has been frequently amended at different times, rarely functions with all parts in perfect harmony. Even when a statute is the product of a single enactment, its provisions may embody compromises of various political and fiscal objectives. When, in addition, a statute has undergone numerous amendments during a fifty year history, some of the amendments may well have objectives that are not completely consistent with the objectives of earlier enacted provisions.

Nonetheless, if the component parts had a rational basis when enacted, they are not rendered invalid by reason of the fact that the rational basis is not wholly consistent with the objectives of all the other portions of the statute. It would ask practically the impossible to require of subsequently elected legislatures that their statutory amendments harmonize perfectly with the original objectives of all surviving portions of the statutes. If this were the test, few complex statutes would survive. *Bowen v. Owens*, 476 U.S. 340, 348, 106 S.Ct. 1881, 1886, 90 L.Ed.2d 316 (1986) (gradual steps to increase survivorship benefits upheld despite problematic distinctions between widowed spouses who remarried and similarly situated divorced widowed spouses—Congress may act "one step at a time").

There is a firm reasonable basis in service of the objectives of this statute for the distinctions here questioned. This is not a case of artful justification of a maliciously discriminating statute by conjuring up some disingenuous "rationale." The fact that there has been some shift in congressional purpose over the years resulting in different provisions having inconsistent, but not incompatible, tendencies does not invalidate the scheme or any of its constituent provisions. Legislation nearly always involves compromise.

### III. Substantial Evidence to Support Secretary's Factual Findings

 Finally, appellant argues that the Secretary had no basis for finding that appellant was "not without fault" in receiving overpayments. The Secretary's decision must be affirmed if it was supported by substantial evidence, and it was. The pertinent regulation, 20 C.F.R. § 404.511, places on recipients of benefits the responsibility to exercise "a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention of the Administration."[5] Appellant had signed an application making representations as to his intended retirement at 65. He received benefits based on the assumption that he would do so. His failure to advise the Secretary of his change of plans which required a reduction of his benefits unquestionably supports the Secretary's finding that plaintiff was "not without fault" and failed to exercise the "high degree of care" required. His contention that he believed, based on the Claims Representative's advice, that his payments would be automatically adjusted is undermined by the undisputed fact that he continued to receive the overpayments, month after month, for over a year. The Secretary had substantial evidentiary basis to find that plaintiff was not "without fault" in failing to exercise the high degree of care required.

### Conclusion

The district court's judgment is affirmed.

---

5. 20 C.F.R. § 404.511 defines "fault" for purposes of such an overpayment. In relevant part, it states:

> (a) *Degree of care.* An individual will not be 'without fault' if the Administration has evidence ... which shows ... failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention of the Administration by an immediate report or by return of a benefit check....

20 C.F.R. § 404.510 provides in part that an individual may be deemed "without fault" if he relied on an erroneous interpretation of Social Security regulations from an official source:

> ... [A]n individual will be considered "without fault" in accepting a payment which is incorrect ... if it is shown that such failure to report or acceptance of the overpayment was due to one of the following circumstances:
> ... (b) Reliance upon erroneous information from an official source within the Social Security Administration....