**Carol G. ELLIS, Plaintiff–Appellant,**

v.

**Kenneth APFEL,\* Commissioner of Social Security, Defendant–Appellee.**

**No. 97–6143.**

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1998.

Decided June 9, 1998.

---

\* Kenneth Apfel was sworn in as the Commissioner of Social Security on September 29, 1997. He is properly substituted as a defendant in this action pursuant to Fed. R.App. P. 43(c); *see, Schaal v. Apfel,* 134 F.3d 496, 496 n. 1 (2d Cir.1998).

Jill Ann Boskey, Center for Disability Advocacy Rights (CeDAR), Inc., New York City, for Plaintiff–Appellant.

Linda A. Riffkin, Asst. U.S. Atty., (Mary Jo White, U.S. Atty. for S.D. of New York, and Kathleen A. Zebrowski, Asst. U.S. Attorney, on brief), New York City, for Defendant-Appellee.

Before VAN GRAAFEILAND, WALKER, Circuit Judges, and KOELTL,[1] District Judge.

KOELTL, District Judge:

The plaintiff, Carole Ellis, appeals from a judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *District Judge*) affirming the

---

1. The Honorable John G. Koeltl, District Judge of the United States District Court for the South-ern District of New York, sitting by designation.

defendant's[2] reduction of her Supplemental Security Income ("SSI") benefits. The Commissioner of Social Security determined that certain payments made to the plaintiff's landlord (who is not related to Ms. Ellis) by a third-party (who is also not related to Ms. Ellis) constitute in-kind support and maintenance to Ms. Ellis. The Commissioner therefore concluded that these third-party payments should reduce the plaintiff's benefits under the SSI program.

The plaintiff argues that the amount of any reduction in her SSI benefits should be governed by this Court's prior opinion in *Ruppert v. Bowen,* 871 F.2d 1172 (2d Cir.1989). In *Ruppert,* the Court limited the amount of alleged unearned income that may be imputed to an SSI recipient from housing provided by a landlord who is a family member. The plaintiff also argues that those SSI regulations which distinguish the situation of a third-party who makes payments on a recipient's behalf to an unrelated landlord from the situation discussed in *Ruppert* are irrational and unconstitutional. We agree with the district court that *Ruppert* does not apply to the facts of this case and that the distinctions drawn by the Commissioner's regulations are rational and not unconstitutional. We therefore affirm.

## I.

### (A)

We begin with the complex regulatory framework within which the facts of this case must be understood. The SSI program "provides benefits to aged, blind, or disabled individuals who meet the statutory income and resource limitations." *Gordon v. Shalala,* 55 F.3d 101, 101 (2d Cir.1995) (citing 42 U.S.C. §§ 1382 & 1382a and 20 C.F.R. Part 416, Subpart K), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). An SSI recipient is paid a flat monthly benefit, but that monthly benefit is reduced by the amount of non-excludable "income" which the

recipient receives. 42 U.S.C. § 1382(b). For purposes of determining SSI benefits, "income" is defined as anything that a recipient receives in cash or in-kind that can be used to meet the recipient's needs for food, clothing and shelter. 20 C.F.R. § 416.1102. In this context, "[i]n-kind income is not cash, but is actually food, clothing, or shelter, or something [the recipient] can use to get one of these." *Id.*

Within this regulatory framework, bills paid by a thirdparty on behalf of an SSI recipient are not considered income in determining the amount of benefits to which the recipient is entitled. However, the value of anything the recipient receives as a result of such payment is included in the recipient's income if what is received fits within the definition of in-kind income. *See* 20 C.F.R. § 416.1103(g). Thus, as the regulations explain, if the recipient's daughter uses her own money to pay a grocer to provide the recipient with food, the payment itself is not considered income because the recipient does not actually receive the money or food directly from her daughter. On the other hand, the value of the food that the grocer provides to the recipient because of the daughter's monetary payment is considered in-kind income when calculating the SSI benefits owed to the recipient. *See id.* Inkind income which is derived from someone else's payment of a recipient's food, clothing, or shelter is also referred to as in-kind support and maintenance. *See* 20 C.F.R. § 416.1130(b).

In-kind support and maintenance is valued using one of two methods. *See* 20 C.F.R. §§ 416.1121(h) & 416.1130(c). When an SSI recipient lives in the household of another person who provides both food and shelter, in-kind income is valued at one-third of the recipient's federal benefit rate, regardless of its actual value. *See* 20 C.F.R. § 416.1131 (describing the "one-third reduction [valuation] rule"). In other situations where the recipient does not live in the household of

---

**2.** The functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security effective March 31, 1995. *See* 42 U.S.C. §§ 901–09. The administrative decision in this case became final before the transfer of authority to the Commissioner. However, as the Commissioner is properly the named-defendant in this action, we refer to the Commissioner rather than the Secretary throughout this opinion. *See Schaal,* 134 F.3d at 498, n. 2.

another person who provides both food and shelter, the Social Security Administration ("SSA") presumes that the in-kind income is worth a maximum value which is equal to one-third the recipient's federal benefit rate plus $20. *See* 20 C.F.R. § 416.1140 (describing the "presumed [maximum] value rule"). When the presumed maximum value rule is used, the recipient can rebut the SSA's presumption by showing that either (1) the current market value of the in-kind support and maintenance received minus any payment made for it by the recipient, or (2) the actual amount paid by a third-party on the recipient's behalf, is lower than the presumed maximum value. *See id.*

The SSA uses a special procedure in determining whether an SSI recipient has received in-kind support and maintenance with respect to her shelter in the form of a rental subsidy. *See* Programs Operation Manual System, SI 00835.380 (the "POMS".)[3] Under the POMS, the recipient is deemed to receive a rental subsidy if her required rent is less than the amount of rent that a landlord would otherwise charge a tenant under a "business arrangement." *Id.* at Point C(1). The SSA presumes that under a business arrangement, the landlord would normally charge a required rent which equals or exceeds the maximum rent allowable under applicable rent control laws (hereinafter, the "current market rental value"). *Id.* at Point (C)(2)(a).[4] For this purpose, the SSA defines required rent as "the amount [of rent] required by a landlord under the terms of the rental agreement, regardless of the source(s) of payment." *Id.* at Point B(2).

In determining whether a business arrangement exists between an SSI recipient and her landlord, the POMS directs the SSA to consider whether the recipient and her landlord share a parent/child relationship. If there is no such relationship, the SSA presumes that a business arrangement exists and that the recipient has not received a

rental subsidy because her landlord charges a required rent which at least equals the current market rental value. On the other hand, if there is a parent/child relationship between the recipient and her landlord, the SSA presumes that the landlord charges a required rent which is less than the current market rental value—in other words, a reduced required rent. In that situation, the SSA must consider other factors, including the landlord's reason for accepting a reduced required rent, to determine whether the recipient receives a rental subsidy. Once the SSA determines that the recipient receives a rental subsidy, the entire amount of that subsidy is considered in-kind support and maintenance available to the recipient. Strict application of this rule could result in the reduction of a recipient's SSI benefits according to the presumed maximum value rule where, for example, the recipient is a parent who pays a substantial amount of her benefits to live in her child's home.

However, this Court held in *Ruppert* that further analysis is required in determining whether an SSI recipient has received a rental subsidy when she pays a reduced required rent. Each of the plaintiffs in that case lived in housing which was provided by landlords related to those plaintiffs. 871 F.2d at 1175–76. This Court held in *Ruppert* that a recipient derives in-kind income from such a living arrangement only to the extent that she receives an "actual economic benefit" from the reduced required rent that she pays to her related landlord. In other words,

> if the proportion of income that [the SSI recipient] expend[s] on shelter is so great that it flies in the face of reality to conclude that unearned income in the form of subsidized shelter ... is actually available to the recipient, the unearned income should be disregarded.

*Id.* at 1180 (quoting *Jackson v. Schweiker,* 683 F.2d 1076, 1085 (7th Cir.1982)) (internal quotation marks omitted). If the recipient

---

3. Although the POMS has no legal, binding effect, it is the authorized means for issuing official SSA policy and operating instructions regarding the agency's interpretation of regulations. *See* POMS § 2002.001; *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

4. *See also* 20 C.F.R. § 416.1101 (defining "current market value" as the price of an item on the open market in the recipient's locality).

does not receive an "actual economic benefit" from the reduced required rent—because the recipient already spends such a high proportion of her income on rent—no rental subsidy is created and the difference between the reduced required rent and the current market rental value is not imputed to the recipient as in-kind support and maintenance.

This Court did not articulate in *Ruppert* the precise means by which the "actual economic benefit test" was to be applied in this Circuit. The Court did, however, indicate that the regulations applied in the Seventh Circuit pursuant to *Jackson*[5] might provide a good indication of that, although it did not necessarily require their adoption as a matter of law. *See Ruppert*, 871 F.2d at 1181; *Gordon*, 55 F.3d at 102; *Jackson*, 683 F.2d at 1087 (unearned income attributable to the receipt of shelter or other basic necessities at prices below market value will be imputed to a recipient "only to the extent that the unearned income represents additional resources available to the recipient (increased purchasing power) to meet his or her basic needs.") Subsequent to this Court's decision in *Ruppert*, the SSA issued the *Ruppert* Acquiescence Ruling,[6] AR 90–2(2), 55 Fed.Reg. 28,947 (1990) and

> ... decided that it will determine [with respect to SSI applicants or recipients in the Second Circuit] that an applicant or recipient did not receive an 'actual economic benefit' from a rental subsidy when the monthly amount of rent required to be paid equals or exceeds the presumed maximum value described in 20 C.F.R. Section 416.1140(a)(1) (one-third of the Federal benefit rate plus the $20 general income exclusion). If the required amount of rent is less than the presumed maximum value, we will impute as in-kind support and maintenance the difference between the required amount of rent and either the

presumed maximum value or the current market rental value, whichever is less.

*Id.;* POMS SI 00835.380, at Point (C)(2)(b); *cf. Jackson* regulation, 20 C.F.R. § 416.1130(b).

Put another way, under the *Ruppert* Acquiescence Ruling, there can be no rental subsidy imputed to an SSI recipient provided that the recipient spends at least the presumed maximum value on rent. However, this Ruling applies only to rental subsidies. Under the normally applicable SSI regulations, there can be no rental subsidy in the context of housing provided by an unrelated landlord because the Commissioner presumes that the rent charged to the recipient is the current market rental value of the property. Thus, this case—which as stated below concerns payments made by an SSI recipient's unrelated friend to her unrelated landlord—does not fall squarely within the ambit of *Ruppert* or the terms of the *Ruppert* Acquiescence Ruling. This case, rather, concerns the provision of in-kind support and maintenance by an unrelated third-party.

### (B)

The facts are undisputed. The plaintiff lives alone in an apartment that she rents in New York City from a landlord who is not related to her. The total rent for that apartment is $461.59 per month, of which the plaintiff pays $180 directly to her landlord. The plaintiff's friend, Mr. Jan Klein, who is also not related to her, pays the remaining $281.59 of Ms. Ellis' rent directly to her landlord. There is no evidence in the record which suggests that Mr. Klein is liable to the plaintiff's landlord for any amount of rental payment.

The plaintiff applied for and received SSI benefits beginning in 1989, but the SSA recalculated and reduced the amount of those

---

5. *See* 20 C.F.R. § 416.1130(b) (hereinafter, the "*Jackson* regulation") ("In the ... Seventh Circuit ..., a business arrangement exists when the amount of monthly rent required to be paid equals or exceeds the presumed maximum value.... In those States, if the required amount of rent is less than the presumed maximum value, we will impute as in-kind support and maintenance, the difference between the required amount of rent and either the presumed maxi-

mum value or the current market value, whichever is less.").

6. Acquiescence Rulings explain how SSA will apply decisions of the United States Courts of Appeals to other cases in the same Circuit when those decisions are at variance with the SSA's national policies in adjudicating claims under the Act. *See* 20 C.F.R. § 416.1485.

benefits in 1991. The SSA found that Mr. Klein's payments to Ms. Ellis' landlord for the provision of her shelter were in-kind support and maintenance to the plaintiff that should be deducted from Ms. Ellis' monthly SSI benefits. When the plaintiff's request for reconsideration of the SSA's decision to reduce her benefits was denied, she requested and received a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that the plaintiff's SSI benefits were subject to reduction because she received in-kind support and maintenance in the form of a rental subsidy from Mr. Klein.

The plaintiff thereafter appealed to the SSA's Appeals Council. The Appeals Council likewise agreed that the plaintiff's benefits should be reduced. However, it found that she had not received in-kind support and maintenance in the form of a rental subsidy because Ms. Ellis and her landlord share a business relationship from which no rental subsidy is presumed to arise. Rather, the Appeals Council found that the value of the shelter the plaintiff received from her landlord as a result of Mr. Klein's payment of a portion of Ms. Ellis' rent should be included in her income. The Appeals Council found that Mr. Klein's payment constituted in-kind support and maintenance to the plaintiff which is valued under the "presumed value" rule. The decision of the Appeals Council became the final decision of the Commissioner.

The plaintiff challenged the Commissioner's final decision in the district court and argued that the SSA incorrectly limited this Court's holding in *Ruppert* to living arrangements in which there is a familial landlord/tenant relationship. The plaintiff specifically argued that such a limitation violated the Fifth Amendment's guarantee of equal protection.[7] Judge Wood thoroughly analyzed the distinctions drawn by the SSA among related landlords, unrelated landlords and payments by third-parties (whether related or unrelated)[8] and found that they did not violate the plaintiff's constitutional rights. *See Ellis v. Chater,* 1997 WL 177893, at *6 (S.D.N.Y.1997). The district court also found that *Ruppert* did not apply to the classification within which the plaintiff's living arrangement fell. The plaintiff appeals from the judgment of the district court.

## II.

This Court's decision in *Ruppert* did not deal with a third-party's payment on behalf of an SSI recipient to her unrelated landlord, and the Commissioner's *Ruppert* Acquiescence Ruling has not applied the *Ruppert* reasoning beyond a living arrangement in which the landlord and recipient share a parent/child relationship. As noted above, the plaintiff argues that the resulting classifications drawn by the Commissioner's "crabbed reading of *Ruppert*" are irrational and unconstitutional.

The classifications used by the SSA in determining the level of SSI benefits to which an SSI recipient is entitled are subject to rational basis review. *See Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976); *Brown v. Bowen,* 905 F.2d 632, 635 (2d Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 979, 112 L.Ed.2d 1064 (1991); *Spragens v. Shalala,* 36 F.3d 947, 950 (10th Cir.1994) (same), *cert. denied,* 514 U.S. 1035, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995). Under this standard, the statute and regulations on which the classifications are based must be upheld if they "have a rational basis and do not engage in invidious discrimination, regardless whether flaws may be found in their logic." *Brown,* 905 F.2d at 635

7. Ms. Ellis also argued that for purposes of calculating her SSI benefits, the required rent is the portion of rent that she personally contributed rather than the total amount of rent that her landlord received—which included Mr. Klein's contribution. As Judge Wood explained, this argument is without merit because the POMS' definition of required rent specifically contradicts the plaintiff's contention. *See Ellis v. Chater,* No. 94 Civ. 6754, 1997 WL 177893, at *3 n. 3 (S.D.N.Y. Apr. 11, 1997). Moreover, there is no indication in the record that Mr. Klein had an obligation to the plaintiff's landlord or that the plaintiff's landlord did not hold Ms. Ellis liable for the total amount of rent.

8. The regulations do not distinguish between payments made by related and unrelated third-parties on behalf of a recipient with respect to food, clothing and shelter. *See, e.g.,* 20 C.F.R. § 416.1103(g).

(citing *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)); *see also FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). There is no allegation in this case that the classifications drawn by the Commissioner infringe fundamental rights or involve invidious discrimination. Thus, the issue is whether there is a rational basis for the distinctions drawn by the SSA with respect to rental subsidies and in-kind income among related landlords, unrelated landlords, and payments by third-parties (whether related or unrelated).

■ The first distinction drawn by the SSA is between an SSI recipient who has a related landlord and a recipient who has an unrelated landlord. Under the regulations and the POMS, a recipient derives a rental subsidy from her living arrangement only if her landlord is also her parent or child. This is because the SSA presumes that a parent is likely to charge a child (or vice versa) a reduced required rent. Accordingly, the amount of the recipient's rental subsidy is the difference between the current market rental value and the required rent. On the other hand, the SSA presumes that a landlord who is neither a recipient's parent nor child is likely to charge a required rent which equals or exceeds the current market rental value. Thus, the recipient derives no rental subsidy under this living arrangement because the "unrelated landlord" [9] is presumed to recover, at a minimum, the current market rental value of the rental property.

■ As the district court recognized, the SSA's presumed distinction between related and unrelated landlords promotes adminis-

trative convenience. It recognizes the likelihood that a parent or child will not charge a market rent to the respective child or parent. At the same time, the distinction recognizes that an unrelated landlord is likely to charge the market rent. This, in turn, allows the SSA to avoid having to calculate the market value of every SSI applicant's housing when that applicant rents from an unrelated landlord. *Ellis,* 1997 WL 177893, at *4. A presumption which serves administrative convenience by approximating the results that a case-specific analysis would yield is constitutional as long as its "lack of precise equivalence does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny.", *Mathews v. Lucas,* 427 U.S. 495, 509, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Where, as here, rational basis is the level of review to be applied, "the materiality of the relation between the statutory classifications and [the probable amount of required rent] they assertedly reflect need not be scientifically substantiated." *Mathews,* 427 U.S. at 510, 96 S.Ct. 2755 (internal quotations omitted). In this case, the presumption that unrelated landlords are less likely to offer a reduced required rent than related landlords approximates the results that a case-by-case analysis would produce. Thus, the SSA's distinction between related landlord/recipient relationships and unrelated landlord/recipient relationships is supported by a rational basis and is permissible under the Fifth Amendment.[10]

■ The SSA also distinguishes between a recipient who pays a reduced required rent to an unrelated landlord, and a recipient for whom a third-party makes a payment of her required rent to an unrelated landlord. The

9. We use the term "unrelated landlord" with respect to a landlord who is neither the tenant's parent nor child. *See* POMS SI 00835.380, Point A. The term "related landlord" refers to a landlord who is the tenant's parent nor child. *Id.* Thus, the SSA considers a landlord who shares any familial relationship *other than that of parent/child* with its tenant to be unrelated for the purpose of determining whether a recipient has derived a rental subsidy. Because the landlord in this case had no familial relationship with the plaintiff, there is no occasion to consider whether there is any basis to challenge the SSA's limitation of familial relations to that of parent and child and its failure to include other familial

relationships such as sibling relations. *See Ruppert,* 871 F.2d at 1176–77 (applying holding to plaintiff "dependent on her relatives for support" who lived "on one floor of her brother's home.")

10. We note that *Ruppert's* "actual economic benefit test" provides extra protection only to a recipient who would otherwise derive a rental subsidy from her living arrangement. Since the regulations provide that a recipient with an unrelated landlord does not derive a rental subsidy, such a recipient has no need for *Ruppert's* protection as compared to a recipient with a related landlord.

SSA does not inquire into the amount of rent that the recipient actually pays to an unrelated landlord because it presumes that the unrelated landlord charges—and the recipient actually pays—a required rent which equals or exceeds the current market rental value. Since the recipient is not deemed to receive a rental subsidy with respect to this living arrangement, *Ruppert* does not apply. Where a third-party makes a rent payment to the recipient's unrelated landlord, the SSA also presumes that a business arrangement exists between the unrelated landlord and the recipient such that no rental subsidy is created and *Ruppert* does not apply. However, the value of the shelter that the recipient receives as a result of the third-party's payment on the recipient's behalf is in-kind support and maintenance to the recipient pursuant to 20 C.F.R. § 416.1103(g).

The plaintiff argues that no distinction should be drawn between these two living arrangements because the amount contributed by a recipient toward her unreduced required rent where a third-party makes a rent payment to the recipient's unrelated landlord may equal or exceed the total amount paid by a recipient to an unrelated landlord who has reduced her required rent below the current market rental value. However, this distinction has a rational basis, again approximating the results that a case-by-case analysis would produce. It recognizes that unrelated landlords generally charge a current market rental value and that assistance to an SSI recipient provided by a third-party is generally an indication that the SSI recipient is herself paying less than the current market rental value—and thereby receiving in-kind income. This distinction promotes administrative efficiency by avoiding the need to determine the current market rental value in the cases of unrelated landlords.

■ Finally, the SSA distinguishes between an SSI recipient who pays a reduced required rent to a related landlord, and a recipient for whom a third-party pays a portion of the required rent to an unrelated landlord. The SSA presumes that the related landlord does, in fact, charge a reduced required rent. Under that presumption, the recipient is deemed to receive a rental subsidy because the landlord does not recover the current market rental value of the property. In this Circuit, the SSA must apply *Ruppert's* "actual economic benefit test" before determining that the difference between the current market rental value and the reduced required rent is in-kind support and maintenance to the recipient in the form of a rental subsidy. Under the *Ruppert* Acquiescence Ruling, a recipient will not be found to have a rental subsidy where the recipient pays at least the presumed maximum value of rent to a related landlord. However, the SSA does not apply the "actual economic benefit test" with respect to a living arrangement, such as that present here, where a third-party pays a portion of required rent to an unrelated landlord. This is because the landlord is presumed to recover the current market rental value of the property through the required rent; no rental subsidy is created even if the recipient only pays a portion of the required rent. Instead, the SSA values the shelter that the recipient receives from the third-party's partial payment as in-kind support and maintenance pursuant to 20 C.F.R. § 416.1103(g).

The plaintiff argues that a third-party's partial payment of an SSI recipient's required rent to an unrelated landlord is the equivalent of a rental subsidy provided by a related landlord. Accordingly, Ms. Ellis argues that Mr. Klein's payment of her required rent should also be subject to *Ruppert's* "actual economic benefit test" before it can be used to reduce her SSI benefits. However, there is a rational basis for this last distinction drawn by the SSA and the *Ruppert* Acquiescence Ruling that limits *Ruppert's* "actual economic benefit test" to the provision of housing by a related landlord.

*Ruppert* recognizes that an SSI recipient presumably has little discretion over the type of housing that her family can provide. For example, as the district court noted, such housing might not be available to anyone other than a family member and is not fungible in the way that housing in the open market is. *See Ellis*, 1997 WL 177893, at *6. In addition, there are "many worthy reasons why a recipient may choose to live with, or in

close proximity to, family members." *Id.* In conformity with *Ruppert,* the SSA applies the "actual economic benefit test" so as not to penalize a recipient whose family members provide more expensive housing than the recipient could afford on the open market. In addition, a recipient for whom a third-party makes a partial payment of rent may be able to afford more expensive housing than she otherwise could in the third-party's absence, notwithstanding the fact that the recipient's share of the rental payment constitutes a large percentage of her income. However, in that situation, the decision to live in more expensive housing is not a function of a factor which is beyond the recipient's control—i.e. a familial relationship—but is one that is made by the recipient.

It is thus reasonable for the SSA to conclude that a third-party payment to an unrelated landlord provides a portable economic benefit to the SSI recipient who could use that economic benefit elsewhere and live in less expensive housing. There is nothing irrational about the SSA's decision to treat the provision of housing by related landlords differently from third-party payments to unrelated landlords. There is nothing in *Ruppert* to the contrary, and it does not fly in the face of economic reality to conclude that Mr. Klein's payments are actually available to Ms. Ellis so as to be included in her in-kind income.

## CONCLUSION

The reduction in the plaintiff's SSI payments for the in-kind support and maintenance that she receives from Mr. Klein's rental payments to her unrelated landlord is neither unconstitutional nor inconsistent with *Ruppert.* The judgment of the district court is AFFIRMED.