Sylwia **JANKOWSKI–BURCZYK,**
Petitioner–Appellee,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellant.**

Docket No. 01–2353.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 26, 2002.
Decided: May 29, 2002.

James K. Filan, Jr., Assistant United States Attorney for the District of Connecticut, New Haven, CT, (John A. Danaher III, United States Attorney, and Jeffrey A. Meyer, Assistant United States Attorney of Counsel, on the brief), for Appellant.

David Shahoulian, Law Student Intern, New Haven, CT, (Carroll L. Lucht, Jerome N. Frank Legal Services Org., and Alice Clapman, Law Student Intern, on the brief), for Appellee.

Before KEARSE, JACOBS, Circuit Judges, JONES, District Judge.*

* The Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

JACOBS, Circuit Judge.

Respondent–Appellant Immigration and Naturalization Service ("INS") appeals from an order entered by the United States District Court for the District of Connecticut (Hall, *J.*) granting Petitioner–Appellee Sylwia Jankowski–Burczyk's ("Jankowski") petition for a writ of habeas corpus. Jankowski's petition sought relief from a final order of removal from the United States. The district court concluded that Jankowski was denied equal protection by virtue of her status as a lawful permanent resident ("LPR"), which rendered her ineligible for a discretionary waiver based on family hardship under amended § 212(h) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(h). Jankowski would have been eligible for such a discretionary waiver had she not been an LPR, i.e., had she been a "non-LPR."

We reverse.

# I

Jankowski is a native and citizen of Poland who was admitted to the United States as a refugee in 1983, at the age of seven. In 1985, Jankowski's status was adjusted to that of a lawful permanent resident, retroactive to the date of her original entry. Jankowski has a six-year-old son who is a citizen of the United States. Jankowski's father is also a U.S. citizen and her mother is an LPR.

On January 28, 1999, Jankowski entered a plea of guilty to federal bank larceny, in violation of 18 U.S.C. § 2113(b). She was sentenced principally to a term of twenty-one months' imprisonment and ordered to pay $84,634 in restitution.

On March 21, 2000, the INS issued a Notice to Appear charging Jankowski as removable from the United States, under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that she had been convicted of an aggravated felony. On May 3, 2000, an immigration judge found Jankowski removable as charged and ineligible for any discretionary relief. The immigration judge determined that he lacked authority to rule on Jankowski's constitutional arguments but acknowledged that these arguments were preserved for appeal. The Board of Immigration Appeals ("BIA") affirmed on November 16, 2000, and likewise concluded that it lacked competence to rule on the constitutionality of the statutes it administers.

On December 18, 2000, Jankowski filed a *pro se* motion for a writ of habeas corpus, seeking relief (in pertinent part) on equal protection grounds. The district court granted the petition, concluding that:

> The court cannot imagine a rational basis that Congress could have had for choosing to disadvantage LPR aggravated felons, as against non-LPR aggravated felons, when both have been convicted of the same crime, with regard to eligibility for discretionary extreme family hardship waivers under 8 U.S.C. § 1182(h). The court is compelled to agree with the *Song* court that "[t]his distinction simply defies logic, and as such, violates the equal protection clause of the Constitution," as applied to the petitioner under the Fifth Amendment Due Process Clause.

*Jankowski v. INS*, 138 F.Supp.2d 269, 285 (D.Conn.2001) (quoting *Song v. INS*, 82 F.Supp.2d 1121, 1134 (C.D.Cal.2000)). The district court remanded the matter to the BIA for further proceedings to allow Jankowski to pursue her claim for a § 212(h) discretionary waiver on the basis of extreme family hardship.

# II

This appeal concerns the constitutionality of the waiver provision found in

§ 212(h) of the INA, 8 U.S.C. 1182(h), which authorizes the Attorney General to waive certain criminal grounds of inadmissibility, including the crime of which Jankowski was convicted.[1] (By its terms, § 212(h) provides for a waiver of inadmissibity only; but by a quirk elsewhere in the INA, § 212(h) in effect allows for a waiver of deportability as well.[2]) Pursuant to § 212(h), the Attorney General has discretion to grant a waiver

in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . . .

8 U.S.C. § 1182(h)(1)(B).

Prior to 1996, the Attorney General had discretion to grant a § 212(h) waiver to any alien other than one who had committed a short list of offenses:

No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to

commit murder or a criminal act involving torture.

8 U.S.C. § 1182(h).

In September 1996, Congress amended § 212(h) to preclude a waiver for a lawful permanent resident who, after lawful admittance, committed any of a (vastly extended) list of offenses:

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .

*Id.*, as amended by § 348(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (1996). The BIA has interpreted this 1996 limitation as applying only to LPRs. *See In re Michel*, 21 I. & N. Dec. 1101, 1104, 1998 WL 40407 (BIA 1998).

The upshot of the 1996 amendment, as interpreted by the BIA and as applied by the INS, is that an LPR is categorically ineligible for a form of relief that a non-LPR would be eligible to seek, even if the two aliens committed the same aggravated felony and even if the citizenship or immigration status of their family members was identical. Jankowski alleges that this effect of the 1996 amendment amounts to

---

**1.** Jankowski's bank larceny is a "crime involving moral turpitude" under § 1182(a)(2)(A)(i)(I). *See Chiaramonte v. INS*, 626 F.2d 1093, 1097 (2d Cir.1980).

**2.** Section 212(h) only waives a ground of inadmissibility, not a ground of deportation. However, both LPRs and non-LPRs who are already present in the United States are able to apply for an adjustment of status under 8 U.S.C. § 1255; upon application, the "applicant is assimilated to the position of an alien outside the United States seeking entry as an immigrant." Charles Gordon et al., *Immigra-*

*tion Law and Procedure* § 51.03[3] (rev. ed.2001); *see also In re Mendez–Moralez*, 21 I. & N. Dec. 296, 299, 1996 WL 227774 (BIA 1996); *Matter of Alarcon*, 20 I. & N. Dec. 557, 562, 1992 WL 249104 (BIA 1992). If the application is granted—which requires, *inter alia*, that the alien be admissible to the United States for permanent residence—the adjustment of status effectively waives the ground of deportation. *See Tibke v. INS*, 335 F.2d 42 (2d Cir.1964); *Snajder v. INS*, 29 F.3d 1203, 1207 (7th Cir.1994).

disparate treatment of persons who are similarly situated and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

## III

■ The Due Process Clause of the Fifth Amendment guarantees every person the equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). "Of course, the government can treat persons differently if they are not 'similarly situated.'" *Able v. United States,* 155 F.3d 628, 631 (2d Cir. 1998).

The premise of the district court opinion is that the disparity between the treatment of "similarly situated non-LPRs and LPRs" is irrational. *Jankowski,* 138 F.Supp.2d at 277, 279. The prior question is whether LPRs and non-LPRs are similarly situated to begin with.

■ There is no dispute that LPRs and non-LPRs are distinct classifications that support disparate treatment under the INA, and that the INA treats them differently in a host of ways, of which § 212(h) is just one and far from the most important. *See, e.g.,* 8 U.S.C. § 1101(a)(20) (LPR has right to reside permanently in the United States), § 1154(a)(1)(B)(i) (LPR has right to sponsor family members for admission to the United States), § 1228(b) (non-LPR aggravated felon subject to special expedited removal proceeding), § 1229b (different cancellation of removal procedures for LPRs and non-LPRs), § 1427 (LPRs eligible to apply for naturalization), §§ 1611–1641 (vast majority of non-LPRs ineligible for any federal public benefit, including retirement, welfare, disability, food stamps, and unemployment assistance). Thus, Congress classifies aliens as either LPRs or non-LPRs; that classification is obviously sensible and useful; and numerous provisions of this highly ramified statute implement the distinction. LPRs and non-LPRs (classifications defined by their mutual exclusion) are therefore not "similarly situated" as to the INA. Congress may enact a regulatory measure as to one classification without a counterpart measure as to the other, and without a rationale for the resulting lack of symmetry.

■ In other words, once Congress has created classifications within a ramified statutory scheme, it need not justify every difference in treatment between the two classes. "A complex statute, especially one that has been frequently amended at different times, rarely functions with all parts in perfect harmony. Even when a statute is the product of a single enactment, its provisions may embody compromises of various political and fiscal objectives.... It would ask practically the impossible to require of subsequently elected legislatures that their statutory amendments harmonize perfectly with the original objectives of all surviving portions of the statutes. If this were the test, few complex statutes would survive." *Brown v. Bowen,* 905 F.2d 632, 637 (2d Cir.1990). The INA imposes different regimes for LPRs and non-LPRs; Congress is therefore free to tweak what it considers a problem in one regime without worrying about the other.

The district court ruled that LPRs and non-LPRs are similarly situated because

the only distinction between the petitioner and such a non-LPR is the petitioner's LPR status upon which the operation of 8 U.S.C. § 1182(h) turns. It is, of course, precisely this distinction

which the petitioner challenges as violative of her right to equal protection. *Jankowski*, 138 at 278. The district court concedes, however, that it would have upheld the statutory provision "had Congress ... precluded only non-LPR aggravated felons from discretionary relief under 8 U.S.C. § 1182," because such disparate treatment would have been justified by "the fact that Congress and the courts have long favored LPRs over non-LPRs." *Id.* at 279. Thus, one premise of the district court opinion is that the non-LPR must be systematically disadvantaged relative to the LPR throughout the statute.

Such systematic disadvantage, however, is not observed to be required in other statutory contexts. For example, once one decides that the tax laws may separately classify couples who are married and those who are unmarried, the tax laws may treat them differently; and while the tax laws fairly consistently prefer the state of marriage to other such arrangements, anomalies exist, such as the marriage tax penalty, which are not for that reason deemed irrational and unconstitutional. *See Druker v. Comm'r*, 697 F.2d 46, 51 (2d Cir. 1982). Indeed, a systematic disadvantage imposed on one class arguably cuts the other way because the equal protection guarantee is particularly concerned with protecting historically disfavored groups. So if only *non*-LPR aggravated felons were precluded from § 212(h) discretionary relief, it would be no valid justification to say that non-LPRs had long enjoyed a disfavored status; the evident justification would be that (under the INA) LPRs and non-LPRs are not similarly situated to begin with.

■ Indeed, systematic disadvantage suffered by a class of persons (similarly situated to others or not) may itself justify isolated, limited, discretionary safety valves, mitigations, or opportunities for

grace, without raising equal protection issues. There is, for example, a rational basis for distinguishing between persons who are in jail and those of us who are not, a distinction heavily to the disadvantage of the convict. *See Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir.1996) (holding that inmates are not similarly situated to persons at large). Yet Congress may underwrite free mail-order college education for convicts without affording the same opportunity to persons outside prisons who may likewise lack funds to pay for it. This is called an irony, not a failure of equal protection.

The district court's reliance on *Francis v. INS*, 532 F.2d 268 (2d Cir.1976), is misplaced. At issue in *Francis* was the disparate treatment of individuals *within* the single class of LPRs. In *Francis*, we held that:

> Fundamental Fairness dictates that [LPRs] who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner. *We do not dispute the power of the Congress to create different standards of admission and deportation for different groups of aliens.* However, once those choices are made, *individuals within a particular group* may not be subjected to disparate treatment on criteria wholly unrelated to any legitimate governmental interest.

*Id.* at 273 (emphases added). The case therefore does not bear upon the disparate treatment of LPRs vis-á-vis non-LPRs.

■ In many contexts, the question of whether the legislature's separate classification of two persons is rationally related to a legitimate government interest may answer the question of whether the two are similarly situated. However, when a legislative body has made a classification within a given statutory scheme as a whole, we will not subject every subsection and every amendment of every subsection

to rational-basis scrutiny. The INA in particular merits such deference. "Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (quotation marks omitted). Therefore, since the INA creates separate classifications for LPRs and non-LPRs, and treats each class differently throughout, LPRs and non-LPRs are not similarly situated, and different treatment of them by Congress does not violate the equal protection component of the Due Process Clause.

## IV

■ Assuming arguendo that LPRs and non-LPRs are similarly situated, we have little difficulty concluding that the difference of treatment between LPRs and non-LPRs in amended § 212(h) is rationally related to a legitimate government purpose. *See Moore v. Ashcroft,* 251 F.3d 919, 925 (11th Cir.2001) (Newman J., Second Circuit Court of Appeals, sitting by designation, on the panel); *Lara–Ruiz v. INS,* 241 F.3d 934, 947 (7th Cir.2001).

■ In *Heller v. Doe,* the Supreme Court held that "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity," and " 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 319–20, 113 S.Ct. 2096 (quoting *Beach Communications,* 508 U.S. at 313, 113

S.Ct. 2096). The Government "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* at 320, 113 S.Ct. 2096. A sufficient reason need not be one actually considered by Congress. *Id.* at 320–21, 113 S.Ct. 2096. Instead, we will assume that a statute is constitutional and "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* (citations and internal quotations omitted). There are several sufficient reasons.

First, Congress could rationally have concluded that LPRs are less deserving of a § 212(h) discretionary waiver because LPRs otherwise enjoy greater privileges and opportunities, which they have abused by committing an aggravated felony. *See Moore,* 251 F.3d at 925; *Lara–Ruiz,* 241 F.3d at 947. The disparity may thus be rationally related to the legitimate governmental purpose of limiting the discretionary waiver to persons who have not abused the system.

Second, "[i]n banning only LPR aggravated felons from waiver eligibility, Congress might well have found it significant that, unlike non-LPR aggravated felons, such aliens have already demonstrated that closer ties to the United States and all of the benefits attending LPR status were insufficient to deter them from committing serious crimes. Therefore, Congress might have reasoned that LPR aggravated felons were a higher risk for recidivism." *Lara–Ruiz,* 241 F.3d at 948; *accord Moore,* 251 F.3d at 925.

The district court rejected the two foregoing rationales on the ground that they suggest that non-LPRs are "under a lesser obligation to follow the law." *Jankowski,* 138 F.Supp.2d at 283 (citing *Plyler v. Doe,* 457 U.S. 202, 215, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). But the obligation to

follow the law is not put in question if Congress determines that an LPR's violation of American laws represents a greater betrayal or poses a heightened concern of recidivism, and therefore calls for harsher measures under the immigration laws. Presumably, for similar reasons, the United States Sentencing Guidelines imposes stiffer penalties on persons who abuse a position of trust and on persons who have committed prior crimes. *See* U.S. Sentencing Guidelines Manual §§ 3B1.3, 4A1.1 (2001). Neither Guidelines provision implies that such a person is under a greater obligation to follow the law; and neither provision seems to implicate equal protection concerns.

Third, because § 212(h) waivers accommodate the interests of relatives who are citizens or who possess LPR status, limiting the availability of the waiver to non-LPRs makes sense. LPRs may sponsor their family members for entry into the country, while non-LPRs cannot. *See* 8 U.S.C. § 1153, 1154. An LPR aggravated felon seeking a discretionary waiver might therefore be invoking the interests of relatives whose immigration was sponsored by the aggravated felon. For the same reasons (and others), LPRs are more likely to have relatives who are citizens and LPRs; so limiting the availability of the waiver to non-LPRs reduces the number of legitimate applications, keeps floodgates closed, and avoids gumming up the system.

■ Fourth, "a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' ... and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 89

S.Ct. 1404, 22 L.Ed.2d 739 (1969) (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

Specifically as to the 1996 amendment eliminating the eligibility of LPR aggravated felons for § 212(h) relief, Congress may well have considered that it had already suitably solved the problem presented by non-LPR aggravated felons. In 1994, Congress authorized the Attorney General to prescribe and use an expedited removal procedure for non-LPR aggravated felons. 8 U.S.C. 1228(b). Several months before passage the 1996 amendment to § 212(h) at issue here, Congress amended 8 U.S.C. § 1228(b) to provide that, if the Attorney General uses the expedited removal procedure, the non-LPR aggravated felon is categorically barred from receiving any form of discretionary relief—including relief under § 212(h). 8 U.S.C. § 1228(b)(5), as amended by § 442 of the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214, 1279 (1996). The statutory scheme thus bars § 212(h) relief to non-LPR aggravated felons if the Attorney General uses expedited procedures and allows the possibility of such relief if the Attorney General uses general removal procedures. Currently, the Attorney General has decided to place all non-LPR aggravated felons who may be eligible for § 212(h) relief in general removal proceedings instead of in expedited removal proceedings, thus preserving their ability to apply for a § 212(h) waiver, though this practice could change by a further exercise of the Attorney General's discretion. We presume that Congress was aware, when it

amended § 212(h) to bar discretionary waivers for LPR aggravated felons, that § 1228(b)(5) already provided a mechanism (triggered by the Attorney General's exercise of discretion) for foreclosing § 212(h) discretionary waivers for non-LPR aggravated felons. We further presume that Congress deemed satisfactory the mechanism that it created to allow foreclosure of 212(h) waivers for non-LPR aggravated felons. And if the Attorney General exercises discretion tomorrow to use the expedited removal procedure of § 1228(b)(5), so that the non-LPR aggravated felon is categorically barred from receiving relief under § 212(h), the disparity cited by plaintiff would end, and there would be no difference in treatment under § 212(h) between LPRs and non-LPRs—except for the difference that would exist if the district court's judgment were not reversed.

Finally, the category of non-LPRs is not limited to aliens who have entered the United States without inspection. Non-LPRs include many persons who could rationally be granted special deference and courtesy under the immigration laws, including ambassadors, public ministers, diplomats, and consular officers; employees of foreign government; temporary visitors for business or pleasure; students; officers and employees of international organizations; fashion models; journalists; scholars, teachers, professors, specialists, researchers, and leaders in fields of specialized knowledge; performers and entertainers; and the immediate families, attendants, servants, and personal employees of many of these groups. See 8 U.S.C. § 1101(a)(15). Also classified as non-LPRs are asylum seekers, persons granted asylum, and refugees.

See 8 U.S.C. §§ 1157, 1158. In granting § 212(h) discretion to the Attorney General, Congress may rationally have considered that the Attorney General would exercise the discretion to grant waivers rationally for reasons of state, policy, courtesy, or comity, not to illegal aliens of the criminal class. In any event, Congress has greatly limited the ability of undocumented alien LPRs to benefit from a § 212(h) waiver.[3]

The district court observed that the classification at issue favors aliens who have committed two crimes (illegal entry plus an aggravated felony) over aliens who have committed one (the aggravated felony alone). See *Jankowski*, 138 F.Supp.2d at 282; *see also Roman v. Ashcroft*, 181 F.Supp.2d 808, 814 (N.D.Ohio 2002) ("It is flatly irrational for Congress to punish those who adhere to this country's immigration laws while offering rewards to those who lack any regard for the legal channels across our borders."); *Song v. INS*, 82 F.Supp.2d 1121, 1133 (C.D.Cal. 2000) ("Moreover, Congress has created a distinction which rewards those necessarily guilty of at least two crimes, illegal entry and the 'aggravated felony,' by treating them better than individuals guilty only of the same 'aggravated felony.'"). This observation rests on the erroneous assumptions that all non-LPRs are here illegally and that all LPRs entered lawfully. Many LPRs came to this country illegally and subsequently applied for a readjustment of status under § 1255(i). And as explained in the prior paragraph, many non-LPRs are here lawfully.

Therefore, even if LPRs and non-LPRs are deemed similarly situated in this con-

---

**3.** As discussed *supra* note 2, § 212(h) only waives a ground of inadmissibility, not a ground of deportability. Previously, an alien who entered the United States without inspection was able to apply for an adjustment of status under § 1255(i), which, if granted, had the effect of waiving the ground of deportability; but that subsection has since been phased out, so that only "grandfathered aliens" retain eligibility. See 8 C.F.R. § 241.10.

text, the separate classification adopted by Congress passes the rational basis test. There is thus no violation of the equal protection component of the Due Process Clause.

\* \* \* \* \* \*

For the foregoing reasons, we reverse.