**David FRERKS, Plaintiff–Appellant,**

**v.**

**Donna E. SHALALA, Secretary of Health and Human Services, and Gregory M. Kaladjian, Commissioner of the New York State Department of Social Services, Defendants–Appellees.**

**No. 866, Docket 94–6111.**

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1995.

Decided April 11, 1995.

Charles Robert, Rockville Centre, NY (Robert, Lerner & Bigler, of counsel), for plaintiff-appellant.

Elliot M. Schachner, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty. for E.D.N.Y., Deborah B. Zwany, Bruce H.

Nims, Asst. U.S. Attys., of counsel), for defendant-appellee Shalala.

Michele M. Woodard, Mineola, NY, Asst. Atty. Gen. (G. Oliver Koppell, Atty. Gen. of the State of N.Y., of counsel), for defendant-appellee Kaladjian.

Before: LUMBARD, VAN GRAAFEILAND, and WINTER, Circuit Judges.

LUMBARD, Circuit Judge:

David Frerks appeals from judgment on the pleadings granted in favor of the United States Secretary of Health and Human Services ("HHS") and summary judgment granted in favor of the New York State Commissioner of Social Services, entered in the Eastern District of New York (Spatt, *J.*) on March 31, 1994. The court upheld Administrative Law Judge ("ALJ") Charles Leonard's determination that Frerks was ineligible for Supplemental Security Income ("SSI") benefits. The court also dismissed Frerks's claims against the Commissioner arising from the termination of Frerks's state Medicaid benefits. We affirm.

We assume familiarity with the district court's opinion, *Frerks v. Shalala,* 848 F.Supp. 340 (E.D.N.Y.1994), and recite only those facts necessary to explain our decision. David Frerks is mentally handicapped, apparently due to birth complications. In June 1988, Frerks began receiving SSI and Medicaid benefits. At that time, the Nassau County Surrogate's Court appointed Frerks's parents as his co-guardians, on condition that they could not collect or dispose of his property except by order of the Surrogate. In September 1988, Frerks received $333,000 in a medical malpractice settlement related to the circumstances of his birth. The funds were deposited in bank accounts that were subject to control by the Surrogate. The Surrogate stated that the funds would be released as "necessary for the support, education and medical needs" of Frerks. *Id.* at 345. In July 1990, the Surrogate approved

the release of $700 per month from these funds. On at least one occasion the Surrogate denied a specific request for release of funds, and in August 1992 he denied Frerks's petition to establish a supplemental needs trust ("SNT") with these funds.[1]

On March 16, 1990, upon notice, HHS terminated Frerks's SSI benefits, retroactive to September 1988. On August 23, 1990, following a hearing, the ALJ affirmed the termination of benefits, finding Frerks ineligible for benefits because he possessed excess resources, but the ALJ declined to order repayment of benefits received before the notice of termination. The HHS Appeals Council affirmed the ALJ's decision. Thereafter, the Nassau County Department of Social Services terminated Frerks's state Medicaid benefits; following a hearing, the Commissioner affirmed the decision.

Frerks filed a complaint in the district court on May 29, 1991. The court granted judgment on the pleadings to HHS, finding that substantial evidence supported the ALJ's ruling. *See* 42 U.S.C. § 405(g); *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990). The court did not consider HHS's alternative argument that Frerks's income exceeded eligibility limits. The court granted summary judgment to the Commissioner, finding both that the Commissioner's delegation of the administration of certain state benefits to HHS was permissible under state law, and that the termination of Medicaid benefits did not violate federal law. On appeal, Frerks addresses only the resource eligibility issue decided by the ALJ.

Frerks first argues the ALJ erred in finding "that the settlement funds were available to [Frerks] for his support and maintenance," 848 F.Supp. at 348. We disagree.

In 1988, the resource eligibility threshold for Frerks was $1,900, rising to $2,000 in 1989. 42 U.S.C. § 1382(a). Resources are "cash or other liquid assets or any real or personal property that an individual owns . . . and could convert to cash to be used for his or her support and maintenance." 20

---

1. On March 9, 1995, the Surrogate granted Frerks's application for the creation of an SNT. Pursuant to the Surrogate's decision of January 31, 1995, however, the grant is not retroactive, but effective only as of the date of the order, and therefore does not affect the ALJ's decision or the district court's ruling.

C.F.R. § 416.1201(a). HHS subdivides resources into (1) liquid resources, *i.e.*, "cash or other property which can be converted to cash within 20 days," including "bank accounts," 20 C.F.R. § 416.1201(b); and (2) nonliquid resources, *i.e.*, "property which is not cash and cannot be converted to cash within 20 days," 20 C.F.R. § 416.1201(c)(1). Resource determinations are made monthly based on the value of an individual's assets on the first day of each month. *See* 20 C.F.R. § 416.1207(a).

Frerks argues that the settlement funds were not available for his support and maintenance because he could not convert them into cash in hand absent a court order, the grant of which was beyond his control. Yet the fact that Frerks may neither draw on nor dispose of the funds at will does not negate the fact that the funds can be released and used for his support and maintenance as the need arises. We therefore find the ALJ's determination that Frerks had resources in excess of the statutory limits to be supported by substantial evidence.

■ Frerks next argues that even if, because of the settlement funds, he possessed excess resources, he was entitled before termination of benefits to notice that he could retain SSI eligibility by "transferring" the funds into an SNT. Because an SNT limits the trust funds' expenditure to items not covered by SSI and Medicaid programs, some New York courts have allowed its use to shield assets from Medicaid eligibility determinations. *See DiGennaro v. Community Hospital of Glen Cove,* 204 A.D.2d 259, 611 N.Y.S.2d 591 (2d Dep't 1994); *Hughes v. Physicians Hospital,* 149 Misc.2d 661, 664–65, 566 N.Y.S.2d 496, 498–99 (Queens County Sup.Ct.1991); *but see In re Moretti,* 159 Misc.2d 654, 657, 606 N.Y.S.2d 543, 545 (Kings County Sup.Ct.1993) (prior to 1993, New York courts generally denied applications to establish an SNT if it was to be "created and funded by an individual's ... representative with property in that representative's hands or control") (citing cases). One district court recognized use of a similar trust as a means of retaining SSI eligibility. *Navarro v. Sullivan,* 751 F.Supp. 349 (E.D.N.Y.1990). Frerks maintains that by

enacting the Medicare Catastrophic Coverage Act ("MCCA"), Pub.L. No. 100–360, 102 Stat. 683 (1988), Congress required HHS to inform him of such options. We disagree.

Prior to the MCCA's enactment, the uncompensated value of any assets that an individual gave away or transferred for less than fair market value within the preceding 24 months was imputed to him for SSI purposes. *See* 42 U.S.C. § 1382b(c) (1982 & Supp. V 1987). The MCCA repealed the restriction on asset transfers for non-institutionalized individuals, while expanding the "look-back" period to 30 months for institutionalized individuals. *See* 42 U.S.C. § 1382b(c) (1988). Frerks contends that because of this repeal, HHS had a statutory duty to instruct him to transfer his own trust assets. To support this claim, Frerks relies in part on 42 U.S.C. § 1382b(b):

> [T]he Secretary shall prescribe the period or periods of time, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal....

The plain language of the statute, however, contains no express notice requirement. Such silence indicates that Congress left to the Secretary decisions about what kind of notice, if any, to provide.

The particular manner in which Congress amended 42 U.S.C. § 1382b(c) confirms this conclusion. As amended, the statute expressly required HHS to inform institutionalized individuals about Medicaid eligibility restrictions that arise from untimely asset transfers under 42 U.S.C. § 1396p(c). Yet Congress declined expressly to impose a parallel duty of notice on HHS to inform non-institutionalized individuals about their new freedom to engage in asset transfers. Such silence undercuts Frerks's claim that by repealing the look-back provisions for non-institutionalized individuals, Congress intended HHS to instruct Frerks to transfer his settlement funds.

The HHS regulations on which Frerks relies in arguing that notice must be given are also to no avail. For example, 20 C.F.R.

§ 416.1336(a) simply states: "Advance written notice of intent to discontinue payment because of an event requiring ... termination of payments shall be given in all cases." Such notice merely provides an affected individual an opportunity to challenge the determination through administrative proceedings, *see* 20 C.F.R. § 416.1336(b); nothing in its language or purpose requires HHS to instruct individuals to dispose of their assets in order to retain eligibility. Similarly, 20 C.F.R. § 416.1240(a)(2) permits HHS to make payments to an individual having excess resources on condition that "[t]he individual agrees in writing to ... dispose, at the current market value, of the [excess] nonliquid resources ... within the time period specified in § 416.1242," *i.e.*, nine months for real property and three months for personal property. As Frerks's ineligibility arose from possession of the settlement funds, not from possession of nonliquid real or personal property, these regulations do not support Frerks's claim that HHS should have entered into an analogous agreement with him.[2]

Even apart from the plain language of the statutes and regulations on which Frerks relies, we do not credit his particular complaint. At the time of the MCCA's enactment, trust funds were treated as "available" to an individual for Medicaid purposes to the full extent of the discretion exercisable by the trustee, where the trust was established by the individual for his own benefit. *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 9506, 100 Stat. 82, 210 (1986), *codified at* 42 U.S.C. § 1396a(k) (Supp. IV 1986) (now repealed). During the time this statute was in effect, Congress clearly did not intend to permit individuals to use trust funds to shield their assets from eligibility determinations. Because this provision was still in effect at the time of the MCCA's enactment, Frerks's claim that HHS was required by the MCCA to instruct him to "transfer" his assets into an SNT established for his own benefit is untenable.

We have considered all of the appellant's arguments and find them without merit.

Affirmed.

---

**2.** The legislative history of 42 U.S.C. § 1382b confirms this conclusion. Although Congress excluded certain property from an individual's countable resources for SSI eligibility, *see* 42 U.S.C. § 1382b(a), it was concerned with the plight of individuals who were saddled with other real and personal property that, although not readily available for their support and maintenance, nonetheless rendered them ineligible for SSI. *See* H.R.Rep. No. 231, 92d Cong., 2d Sess.

153–54 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5140 (discussing disposal of property "not used in the operation of a trade or business" and "buildings or land not used as the individual's abode"). Thus, Congress directed the Secretary to "prescribe the periods of time" for disposal of such property under section 1382b(b). Frerks's settlement funds fall outside such express concerns.