Brenda M. WHITE, for Stanley A. SMITH, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security Administration, Defendant–Appellee.

No. 98–1738.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1998.

Decided Feb. 4, 1999.

Susan Dawson–Tibbits (argued), Prairie State Legal Services, Inc., Peoria, IL, for Plaintiff–Appellant.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL, Ekaterina Scherb (argued), Social Security Administra-tion, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Joseph Heller could have written the plot of Brenda White's struggle to maintain SSI benefits for her disabled son. After being caught between a rock (the Missouri probate court) and a hard place (the Social Security Administration) for nearly four years, Ms. White comes to this Court, asking us to extricate her from the Catch 22 in which she finds herself. With the statutory language behind her, she has proved her entitlement to that relief. For the reasons stated below, we reverse the judgment of the district court.

## I.

Brenda White's son, Stanley Smith, was injured in a car accident when he was three years old. His injuries rendered him eligible for supplemental security income (SSI) bene-fits, which he began receiving in 1990. Ms. White pursued a personal injury action on Stanley's behalf to recover damages for the injuries he suffered in the accident, and in December 1991, Stanley received a $35,000 settlement from that action. Ms. White and her son were living in Missouri at the time, and the Missouri probate court appointed Ms. White conservator of Stanley's assets. The settlement was placed in a restricted trust pursuant to a court order. Because Ms. White had no income at the time of the appointment, a probate court interviewer stressed to her that she remained primarily responsible for Stanley's needs, and that the trust was to remain untouched until Stanley reached the age of eighteen. The court in-terviewer also informed Ms. White that court approval was required before she did any-thing with the money other than placing it in government-backed investments. Ms. White represented to the probate court that, at that time, the assets were not needed for Stan-ley's maintenance and support, and under those circumstances the court appointed her

conservator and issued an order of "no further process." [1]

In January 1995, Ms. White moved her family to Peoria, Illinois. She completed a Statement for Determining Continuing Eligibility for SSI Payments in which she informed the Social Security Administration ("SSA") for the first time about the restricted trust fund. On the basis of this information, the SSA determined that Stanley was no longer eligible for SSI benefits because he had "excess resources." Federal regulations prohibit a person from collecting SSI benefits if that person has more than $2000 in resources available for care or maintenance. The SSA notified Ms. White that the money in the restricted trust constituted a resource under the regulations, and that, not only was Stanley no longer eligible for benefits, but also that he had not been eligible since January 1992, when the trust was created. The SSA informed Ms. White that the amount of SSI benefits that Stanley collected from January 1992 forward could be charged against her. Ms. White sought a reconsideration of that decision, which was denied on March 24, 1995. The Notice of Reconsideration specified that the SSA considered the trust fund to be available for Stanley's support and maintenance, despite the fact that a court order was needed to access the funds.

Brenda White then requested a hearing before an administrative law judge, and simultaneously filed a petition in the Missouri probate court for a release of some of the trust funds. She filed the probate petition with the assistance of the attorney who represented her both in the personal injury action and in her petition for appointment as conservator. She asked the probate court to release $500 per month for Stanley's support and maintenance, for both current support and support retroactive to the date of the personal injury settlement. She also requested access to part of the trust for use as an emergency fund. She explained in the petition that she was unemployed, disabled, and unable to provide for Stanley's support. She maintained that this condition had exist-ed since the creation of the conservatorship, and that the release of funds would be in Stanley's best interest. The probate court summarily denied the petition on July 7, 1995.

In August 1995, an ALJ heard testimony from Ms. White, who was represented by a legal aid attorney. Before the hearing, Ms. White's attorney filed a letter with the ALJ explaining the sequence of events to date and informing the ALJ that the Missouri probate court had denied Ms. White's request for a release of funds. The ALJ issued a Recommended Decision on November 1, 1995, finding that the settlement funds constituted a resource under SSA regulations, and that Stanley had not been eligible for SSI benefits since January 1992 due to excess resources. The ALJ noted that, although the Missouri probate court refused to release the funds, the ALJ did "not know how forcefully this matter was pursued in the Missouri courts." *See In the case of Smith*, Recommended Decision, November 1, 1995, SSA Office of Hearings and Appeals, ALJ Alan M. Weinman, at 4. Moreover, the ALJ explained, no provision of Missouri law indicated that the funds could not be invaded for Stanley's support and maintenance. Because the trust fund was not earmarked for any particular purpose, the ALJ concluded that a "reworded petition," perhaps a more narrow one, not seeking access to an emergency fund, might be granted by the probate court. *Id.* Given that possibility, the ALJ held that the settlement funds held in trust for Stanley were a resource under SSA regulations.

Ms. White appealed this Recommended Decision to the SSA Appeals Council, which issued a letter on September 4, 1996. In the letter, the Appeals Council

> concluded that what is needed to establish that funds in the conservatorship account are not countable as [a] "resource" within the meaning of 20 CFR § 146.1201(a) is evidence proving that the [probate] court would not approve a request that asks for withdrawals for current support and maintenance only. Absent new and material

able to adequately support her family.

---

1. At that time, Ms. White was seeking employment. She later became disabled and was un-

evidence proving that fact, the Appeals Council intends to issue a decision finding that the evidence is not sufficient to establish that the funds in the conservatorship account may not be used for Stanley's support and maintenance and that they are countable as a resource, precluding Stanley's eligibility for supplemental security income benefits.

Letter from Appeals Council to Brenda White, September 4, 1995, Record at 118. Ms. White's legal aid attorney responded by filing two affidavits detailing efforts to further petition the Missouri probate court. In her own affidavit, the legal aid attorney stated that she learned from a staff attorney at the Missouri probate court that a person bringing a petition before that court must be represented by counsel. Because Stanley's case had been closed, Ms. White would also be required to file a petition to reopen the estate before she could bring a petition for the release of funds, neither of which she could do *pro se*. The legal aid attorney, who was licensed to practice in Illinois only, averred that she spoke to Ms. White's Missouri attorney and that he was unwilling to perform this work on a *pro bono* basis. Finally, Ms. White's Illinois legal aid attorney informed the Appeals Council that she tried unsuccessfully to obtain representation for Ms. White through the local legal aid agency in Eastern Missouri. In the second affidavit, Ms. White asserted that she was a single mother of two children, that the father of her children was deceased, that her total income was approximately $880 per month, and that she did not have the funds to hire an attorney in Missouri to file another petition. The SSA did not contest the truth of either affidavit.

The Appeals Council was not moved by this new information. The Council found that Ms. White's inability to petition the Missouri probate court due to her financial circumstances and the requirement that she be represented by counsel did not "bear on the issue of her legal *right* to do so." *In the case of White*, Decision of Appeals Council, SSA Office of Hearings and Appeals, November 12, 1996, at 5 (emphasis in original). The Council held that as long as Ms. White possessed the "legal right to liquidate a portion of the conservatorship account, it is a countable resource under 20 CFR § 416.1201(a), irrespective of extenuating circumstances that prevent her from immediately asserting that right." *Id.* In the absence of proof that the Missouri probate court would not approve a request for withdrawal for current support and maintenance only, the Appeals Council found that the conservatorship account contained excess resources, rendering Stanley ineligible for SSI benefits.

Ms. White appealed the ruling of the Appeals Council to the District Court, arguing that the Appeals Council made two errors. First, she claimed that the ruling that funds in the restricted conservatorship account were countable resources was not supported by substantial evidence. Second, she contended that the SSA's finding that her inability to hire counsel did not prove her inability to access the conservatorship funds was not supported by substantial evidence.

The district court noted that under Missouri law, a conservator generally has the power to use conservatorship funds for the care and maintenance of the beneficiary, and that a court may order disbursement for the support and maintenance of a protected individual when it determines that such a disbursement is necessary. *White v. Apfel*, No. 97–1013, slip op. at 5–6 (C.D.Ill. Jan. 20, 1998). The court found persuasive the fact that the funds were not earmarked for any particular purpose. That a court order was required to access the funds gave rise to the possibility of receiving approval for a reasonable disbursement, reasoned the district court. That was enough to uphold the decision of the Appeals Council.

On Ms. White's second claim, the district court found that although "White ha[d] encountered some difficulties in gaining access to the probate court," she had not persuaded the district court that "she is barred from or incapable of petitioning for limited access to the funds for Smith's reasonable support needs or that the funds cannot be liquidated for Smith's support and maintenance." *Id.*, at 7. The court explained that, because the funds were not being held for any particular purpose, the ALJ could reasonably conclude

that the probate court would permit a limited release of funds necessary for Stanley's support. The court surmised that the probate court had rejected the petition because the amount sought was too great, because Stanley had already been provided for during the period for which retroactive benefits were sought, and because Ms. White sought access to an emergency fund. Characterizing Ms. White's petition to the probate court as a "facially unreasonable request," the court found that she failed to establish that the funds were "completely inaccessible." *Id.*, at 8. The district court therefore upheld the Commissioner's decision that Stanley was ineligible to receive SSI benefits due to excess income as supported by substantial evidence. Ms. White appeals.

## II.

The question before us is whether Stanley had excess resources that rendered him ineligible for SSI benefits, a mixed question of law and fact. Ms. White does not dispute the existence of the restricted trust account, and does not dispute that the funds in it exceed the amount set out in SSA regulations. Rather, she claims that as a practical matter, Stanley has no access to these funds and so they cannot be counted as a resource. The SSA posits that actual access to the funds is irrelevant, because the regulations provide that if the claimant has a *right* of access to the funds, that is enough to trigger a finding of excess resources. The SSA does not dispute that Ms. White's original petition was summarily denied, that she has no funds to hire an attorney to re-petition the Missouri probate court, and that she may not proceed *pro se* in the Missouri court. Thus, the SSA seems to agree that, as a practical matter, even though Ms. White has a right of access to the trust fund, she has no real access. The ALJ seemed to rely on the fact that nothing in Missouri law prohibits Ms. White from attempting to gain access to the trust fund for Stanley's care, reasoning that under SSA regulations, such a finding is sufficient to render the money in the fund excess resources. We must uphold the ALJ's findings of fact if they are supported by substantial evidence. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997). Substantial

evidence is that which a reasonable mind would accept as adequate to support a conclusion. *Id.* We may not decide facts anew, or reweigh the evidence, and we may not substitute our judgment for that of the SSA. *Id.* We need not defer, however, to conclusions of law, and if the Commissioner commits an error of law, we may reverse without regard to the volume of evidence in support of the factual findings. *Id.*

We begin by reviewing the statute under which Stanley claimed eligibility for SSI benefits. Section 1382 provides, in relevant part, that a person who is disabled and whose income does not exceed a particular amount set by statute, and whose resources do not exceed an amount set by statute (in Stanley's case, $2000) is eligible for SSI benefits. *See* 42 U.S.C. § 1382(a). Although the statute does not define "resources," it does allow for the exclusion of certain items in calculating a person's resource level. For example, the term "resources" does not include a home, household goods, and personal effects, so long as their value does not exceed the amount set as reasonable by the SSA Commissioner. 42 U.S.C. §§ 1382b(a)(1) and (a)(2)(A). The regulations promulgated by the SSA in turn explain what types of assets do constitute "resources" within the meaning of the statute:

> [R]esources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.... If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse).

20 C.F.R. § 416.1201(a).

In determining whether conservatorship accounts are resources, the Commissioner looks to state law to determine whether the conservator has the right, authority or power to liquidate the account for the use of the protected person. The SSA "POMS Regional Supplement" contains an analysis of the

availability of funds in conservatorship accounts under state law. The Supplement specifies:

> In Missouri, the conservator is not required to provide for the care and maintenance of the protected person (individual whose funds are in the account), but has the power to do so. However, it may still be presumed, absent evidence to the contrary, that the funds in a conservatorship or "blocked" account are available for the care and maintenance of the protected individual. Even though the conservator may not choose to use the funds for the care and maintenance of the protected person, he retains the power to do so. Thus, the funds are available for such use.

POMS Regional Supplement—Kansas City, SI R01140.215, Record at 71.

The question facing the ALJ was whether Ms. White had rebutted the presumption under Missouri law that the conservatorship funds were available for Stanley's care and maintenance. Because the order creating the conservatorship account contained no restrictions on the use of the funds, other than the requirement of obtaining a court order, and because the ALJ was uncertain whether Ms. White had pursued release of the funds "forcefully" in the Missouri probate court, he found the funds were available, and thus constituted excess resources. The district court likewise concluded that Ms. White had not established an inability to access the conservatorship account. Her unsuccessful petition for a release of the funds in that account did not suffice in that regard because that petition was, in the district court's view, "facially unreasonable."

A dearth of case law addresses this question of whether conservatorship funds should be considered resources. In the Second Circuit, the court upheld a finding that restricted trust funds constituted a resource under the circumstances there. *Frerks v. Shalala*, 52 F.3d 412 (2d Cir.1995). Frerks was mentally handicapped, due to birth complications. He began receiving SSI benefits in June 1994, and a few months later, he received $333,000 in a medical malpractice action related to the circumstances of his birth. His parents were appointed co-guardians, and the settlement was placed in a trust account subject to the control of the Surrogate Court (New York's equivalent of Missouri's Probate Court). The Surrogate Court stated that the funds would be released as needed for the support, education and medical care of Frerks. In fact, the Surrogate Court released $700 per month for Frerks' care, but on at least one occasion denied a specific request for release of additional funds. When the SSA learned of the trust account, it terminated Frerks' SSI benefits, retroactive to the date of the settlement. The Second Circuit agreed that the trust fund should be counted as a resource, even though Frerks required a court order to access the funds, and the court did not always grant requests for release of funds. The court found irrelevant the fact that Frerks could not access the trust account at will, because the funds could and had been released as needed for his care and maintenance. 52 F.3d at 413–14.

The only other federal court to weigh in on the issue of whether a trust account is a resource is a New York District Court. Ms. White cited *Navarro v. Sullivan*, 751 F.Supp. 349 (E.D.N.Y.1990), in support of her claim that Stanley's trust account does not constitute a resource. In that case, the SSA terminated SSI benefits for a developmentally disabled adult who received a settlement in a medical malpractice action. The state court, at the guardian's request, ordered that the settlement funds be placed in a restricted account, available only for a limited use, which specifically did *not* include care and maintenance of the ward. Reversing the ALJ, the district court held that these funds were not available for the claimant's support, and thus were not resources. The district court noted that although "there is something unfair about the state court imposing costs on the federal government without the government being heard," the federal government could amend the regulations to prevent this result if it so desired. 751 F.Supp. at 351.

The SSA asserts that there is no order in this case, as there was in *Navarro*, preventing the conservator from using the restricted account for the benefit of the protected per-

son. Ms. White points out that the probate court refused her request for release of funds, and that she now has no practical access to the probate court due to her financial circumstances. With these arguments in mind, we return to the language of the Social Security regulations, and the POMS Supplement. Under the regulations, the funds are available if a person has "the right, authority or power to liquidate the property." In summarizing Missouri law, the POMS Supplement specified that "it may still be presumed, *absent evidence to the contrary*, that the funds in a conservatorship or 'blocked' account are available for the care and maintenance of the protected individual." (emphasis added).

▉ We conclude that Ms. White presented evidence contradicting the presumption that the funds in the conservatorship account are available for Stanley's care. That is, she presented evidence, undisputed by the SSA, that she requested a release of funds due to changed circumstances, and that request was denied. The SSA makes much of the fact that, when describing her changed circumstances to the probate court, Ms. White failed to inform the court that Stanley's SSI benefits had been terminated. Instead, she merely informed the court that she was herself disabled, was unable to provide for Stanley's care and maintenance, and had been unable to provide for Stanley's care since the time the trust was created. Certainly, in a more perfectly worded petition, Ms. White should have informed the probate court that one of the reasons she could not care for Stanley was that his SSI benefits had been terminated. But the SSA counters Ms. White's "evidence to the contrary" with mere speculation: the SSA speculates that the probate court might have ruled differently had Ms. White informed the court of the termination of SSI benefits. The ALJ speculated that the probate court might have released the funds if Ms. White had pursued

the claim more "vigorously." And the district court speculated that the probate court would have ruled otherwise if Ms. White had drafted a more reasonable,[2] more modest request. Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence. *See Ehrhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir.1992) (substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

Moreover, the probate court's decision to deny the request for release of funds was an exercise of discretion under Missouri law. *See In the Estate of Grass v. Downey*, 880 S.W.2d 567, 568 (Mo.Ct.App.1994). If Ms. White had appealed the probate court's denial of her request, the Missouri appellate court would have been obliged to affirm unless there was no substantial evidence to support the decision, it was against the weight of the evidence, it erroneously declared the law, or it erroneously applied the law. *Id.* The SSA has come forward with no reason to believe the probate court's decision was anything other than a valid exercise of its discretion that would be upheld on appeal. Nor has the SSA offered any reason to believe that the probate court would have ruled differently had it been informed of the termination of SSI benefits. No one disputes that Ms. White's petition to the probate court was filed in good faith, and that the petition informed the court that she was unable to care for her son. That the SSA had terminated Stanley's SSI benefits was cumulative, merely more evidence of the fact that Ms. White could not care for Stanley. We have been given no reason to believe the probate court would have changed its ruling given that evidence.

Under the circumstances, Ms. White was in the same position as the claimant in *Na-*

---

2. We are troubled by the district court's characterization of Ms. White's petition to the probate court as "facially unreasonable." At the time she filed the petition, Ms. White faced taking over the care of her disabled son, and repaying the SSA more than $16,000, at a time when she was herself disabled and unemployed, facts undisputed by the SSA. The SSA conceded at oral argument that it is seeking full reimbursement of the amounts paid to Stanley from the time the trust was created. Thus, there was nothing unreasonable about Ms. White's request. In the absence of any evidence on the reasonableness (or unreasonableness) of the request, the district court erred in ruling on the matter.

*varro*, where the court order creating the conservatorship specified that the funds could not be used for the care and maintenance of the protected person. After the court denied her petition, Ms. White no longer had the right, power or authority to liquidate the funds for Stanley's care and maintenance. We have no reason to believe the court would have released the funds if Ms. White had filed a more narrow petition, or one that described her changed circumstances more completely. She has therefore met the standard set out in the SSA's own regulations, and has shown that the conservatorship account did not constitute a resource for Stanley. Stanley was thus entitled to continue receiving SSI benefits until such time as he had excess resources, and we reverse.

The result may have been different had Ms. White never petitioned the probate court to release funds. Without the probate court's refusal, Ms. White would have had no evidence to rebut the presumption under Missouri law that blocked trust accounts are available for the care and maintenance of the protected person. We reserve for another day the question of whether a lack of access to the probate court due to financial circumstances would be sufficient to rebut the presumption of availability under a particular state's law. But the result today is not based on Ms. White's inability to bring a second petition. Rather it is based on Ms. White's rebuttal of the presumption that the funds were available for Stanley's care and maintenance, a rebuttal the SSA failed to adequately counter. The probate court's refusal to grant Ms. White's good faith petition for a release of funds rebutted the presumption that the funds were available, and the SSA meets that rebuttal with mere speculation.

Once Ms. White rebutted the presumption in this way, the onus was on the SSA to show that she still had access to the funds, notwithstanding the probate court's denial of her petition. The SSA could have met this burden, for example, by showing that as a matter of Missouri law, Ms. White framed her petition incorrectly, or that the probate court necessarily abused its discretion in refusing her petition. But mere speculation that the probate court might have ruled differently if presented with another request is not enough, and that is all the SSA has provided in this case. The POMS Supplement seems to envision the possibility that access will not be granted in all cases, and sets forth a rebuttable presumption of access to account for this possibility. Denial of a valid, good faith petition rebuts the presumption and requires the SSA to show that the probate court, in effect, committed reversible error when it denied the petition. This the SSA has not shown. Without such a showing, the ALJ's decision was not supported by substantial evidence.

This result is consistent with the purpose of SSI benefits, which Congress intended as a program to guarantee a minimum subsistence income level for aged, blind, and disabled persons. *See Inman v. Shalala*, 30 F.3d 840, 841 (7th Cir.1994). Because the conservatorship account was not available for Stanley's support and maintenance, the SSA should have continued Stanley's SSI benefits so that he could maintain a minimum subsistence income level. *See Cannuni v. Schweiker*, 740 F.2d 260, 263–66 (3d Cir. 1984). The judgment is reversed and the matter is remanded to the district court with instructions to enter judgment in Ms. White's favor.

REVERSED AND REMANDED.