Daniel **HECHT**, by his Cò–Guardian, **Donald Hecht, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of the Social Security Administration,[1] Defendant.**

**No. 00 CV 3996(JM).**

United States District Court, E.D. New York.

Aug. 26, 2002.

---

1. Jo Anne Barnhart, the current commissioner of the Social Security Administration, is substituted as the Defendant in place of Kenneth Apfel.

Kassoff, Robert, Lerner & Robert, LLP, Rockville Centre, NY (Charles Robert, of counsel), for Plaintiff.

Alan Vinegrad, United States Attorney, Eastern District of New York, Central Islip, NY, By Vincent Lipari, A. U.S.A., for Defendant.

*Memorandum of Decision and Order*

SPATT, District Judge.

On May 12, 2000, the Social Security Administration ("SSA") determined that Daniel Hecht was eligible for Supplemental Security Income (SSI) payments. The SSA reduced his monthly benefits, however, because he received monthly disbursements from his Supplemental Needs Trust to pay his room and board. Plaintiff moves for a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) and the Commissioner of Social Security ("Commissioner") cross-moves for a judgment affirming the decision, arguing that the Commissioner properly determined the amount of SSI benefits to award plaintiff and that his final decision must, therefore, be affirmed under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## Background

Daniel Hecht ("Daniel") was born on December 14, 1974. When Daniel was three months old, he suffered from a severe reaction to a pertussis inoculation and became permanently disabled. He cannot walk, talk, or perform any activities of daily living. On May 2, 1988, Daniel received a settlement from a malpractice lawsuit in the amount of $500,000. In 1992, funds from the settlement were placed in a conservatorship account. In April 23, 1996, the Supreme Court, Nassau County, issued an order transferring the funds to a Supplemental Needs Trust Fund ("SNT") pursuant to Article 81 of New York's Mental Hygiene Law and appointed Daniel's parents as co-guardians. The court granted Daniel's parents the power to make reasonable expenditures for Daniel's supplemental needs, including monthly expenditures in the amount of $750.00 for room and board.

On April 30, 1996, Plaintiff filed an application for SSI disability benefits. On June 14, 1996, Plaintiff filed a second application for SSI disability benefits. On June 27, 1996, the Social Security Administration ("SSA") denied Plaintiff's first application because it determined that Daniel had unearned monthly income in the amount of $750. On August 2, 1996, Plaintiff requested reconsideration. On May 14, 1998, the SSA granted Plaintiff's second application but reduced the monthly SSI payment based on his receipt of monthly income for food, clothing, or shelter. The SSA valued Daniel's income at $176.66 for June through December 1996, at $181.33 for January through December 1997, and at $184.66 for January through May 1998. On May 19, 1998, Plaintiff appealed this decision. On February 12, 1999, SSA issued a re-determination notice on Plaintiff's first application and determined that Daniel was eligible for reduced SSI payments for those months.

On February 22, 1999, Plaintiff requested a hearing before an administrative law judge. On September 15, 1999, Administrative Law Judge Emanuel Poverstein reversed the decision of the SSA and determined that because the Supplemental Needs Trust funds were excluded as a resource for SSI purposes, any use of the funds for room and board should be excluded as well. On November 3, 1999, Plaintiff was advised that the Appeals

Council intended to review ALJ Poverstein's decision. On May 12, 2000, the Appeals Council vacated ALJ Poverstein's decision and issued a new decision finding that the disbursements from the SNT to pay from Daniel's room and board constituted chargeable unearned income in the form of in-kind support and maintenance.

On July 11, 2000, Plaintiff filed this action. In this complaint, Plaintiff alleges that (1) Defendant has breached his Article II, Section 3 Constitutional duty to "take care that the laws be faithfully executed." by failing to follow the holdings in *Christensen v. Harris Cty.*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), *White v. Apfel*, 167 F.3d 369 (7th Cir.1999), *Ruppert v. Bowen*, 871 F.2d 1172 (2d Cir. 1989), and *Jackson v. Schweiker*, 683 F.2d 1076 (7th Cir.1982); (2) Defendant violated the Due Process Clause of the Constitution by failing to set forth in his awards and denial notices the standards used to compute benefits and citations to applicable regulations; (3) Defendant violated the Due Process Clause of the Constitution by presuming the availability of assets that were in a trust that stated that the trustees were not to distribute the funds if it would result in a loss of government entitlements; (4) Defendant violated "the Equal Protection Clause of the Constitution by denying the mentally incapacitated plaintiff SSI benefits which are provided to competent SSI recipients because the SSA Commissioner presumes the availability of resources under the jurisdiction of the State Court for which there has *not* been an order to distribute the funds for 'support and maintenance' which results in the denial of SSI benefits because a different standard is applied to incompetent SSI recipients than applied to competent SSI recipients;" (5) Defendant "implemented an arbitrary and capricious policy and practice not to apply" 20 C.F.R. § 416.1201, regarding the liquidity of resources; (6) Defendant "implemented an arbitrary and capricious policy and practice not to apply" 20 C.F.R. § 416.1130(b), regarding the definition of in-kind support and maintenance; and (7) Defendant violated Plaintiff's "federal and state statutory rights" in violation of 42 U.S.C. § 1983.

Plaintiff seeks an award of full benefits retroactive to the initial date of his SSI application, and injunctive relief, including orders that the Commissioner end his policy and practice of not "acquiesc[ing]" to the *White* holding and to "State Court orders that limit the use of funds under the jurisdiction of State Court Judges," that the Commissioner implement a policy and practice of issuing notices and agreements and issue an accurate POMS [2] section pursuant to 20 C.F.R. § 416.1242, and that the Commissioner amend the SSA regulations to establish a national standard in compliance with the *Jackson* holding.

On August 7, 2001, Plaintiff moved to remand the case for the reasons set out in the complaint. On October 11, 2001, Defendant cross-moved for judgment affirming the final decision of the SSA.

## I. Plaintiff's Motion to Remand

### A. Remand for purposes of complying with Executive Orders

Plaintiff first argues that Defendant has failed to comply with Executive Orders 13217, 12606, 12612, and 12778. Plaintiff seeks a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) to provide the SSA with an opportunity to comply with these Executive Orders. In

---

2. POMS is an acronym for the SSA's Program Operation Manual System, the SSA's internal agency manual. *Frerks v. Shalala*, 848 F.Supp. 340, 347 (E.D.N.Y.1994), *aff'd,* 52 F.3d 412 (2d Cir.1995).

this regard, the law is clear that there is no private right of action to enforce obligations imposed on executive branch officials by executive orders. *Zhang v. Slattery*, 55 F.3d 732, 747 (2d Cir.1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). Rather, an executive order is privately enforceable only if it is issued pursuant to a statutory mandate or delegation of congressional authority. *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1336 (4th Cir.1995). In fact, Executive Order 13217 states that it is

> intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

Accordingly, Plaintiff's request for a remand on this basis must be denied.

## B. Plaintiff's Due Process Claim

Relying on *Ford v. Shalala*, 87 F.Supp.2d 163 (E.D.N.Y.1999), Plaintiff argues that Defendant violated the Due Process Clause of the Constitution because the May 14, 1998 notice did not inform him of the standards used in computing benefits with a citation to the applicable regulations. Plaintiff therefore seeks an order remanding the case "in order that the defendant has an opportunity to comply with Judge Sifton's unappealed *Ford* decision."

In *Ford*, Chief Judge Sifton held that notices sent to SSI applicants denied those applicants due process of law when they did not identify the provision of federal law, federal regulation, or POMS citation that the Commissioner applied to make determinations to grant or deny, change, or terminate benefits. *Id.* at 186. Here, the parties agree that the May 14, 1998

notice falls within the dates in the definition of the *Ford* class. Further, it is clear that the May 14, 1998 notice does not meet the *Ford* requirements. Defendant argues, however, that a remand would be inappropriate because the relief to class members ordered in *Ford* is the modification of further notices, not remands of pending court cases. Defendant also contends that Plaintiff did not suffer any prejudice from the lack of legal citations since Plaintiff appealed the notice and the Commissioner's final decision did provide the applicable legal citations.

■ The final judgment in the *Ford* case specifies that the class members' remedy is the modification of future notices. *Ford v. Apfel*, 2000 WL 281888, at *1 (E.D.N.Y. January 13, 2000). Therefore, the decision in *Ford* does not compel this Court to remand this case so that the SSA can provide Plaintiff with a statement containing the citations upon which the SSA relied in reducing his benefits. Further, this Court agrees with Defendant that there is no reason to remand this case since the final decision provided the legal citations applicable to the SSA's calculation of his benefits. Accordingly, Plaintiff's request for a remand for the purpose of obtaining a new notice with citations is denied.

## C. Defendant's failure to follow the holdings in *Christensen, White, Ruppert,* and *Jackson*

Plaintiff contends that the SSA has breached its Article II, Section 3 Constitutional duty to "take care that the laws be faithfully executed." by failing to follow the holdings in *Christensen v. Harris Cty.*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), *White v. Apfel*, 167 F.3d 369 (7th Cir.1999), *Ruppert v. Bowen*, 871 F.2d 1172 (2d Cir.1989), and *Jackson v. Schweiker*, 683 F.2d 1076 (7th Cir.1982).

Plaintiff contends that Defendant's application of the SSA's internal manual, the POMS, in lieu of duly promulgated regulations, violates the holding of *Christensen* and that Defendant's refusal to apply the holding of *Jackson v. Schweiker*, 683 F.2d 1076 (7th Cir.1982), to Plaintiff and other SSI claimants not located in the states within the Court of Appeals for the Seventh Circuit violates the Equal Protection Clause as construed in *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

In *Jackson v. Schweiker*, 683 F.2d 1076 (7th Cir.1982), a plaintiff class challenged the policy of the SSA to impute as unearned income to SSI recipients the difference between the rent actually paid for shelter and the fair market rental value of the shelter. The named plaintiff, Jackson, paid her sister $145 for rent with a fair market rental value of $250. *Id.* at 1077. The SSA concluded that Jackson received unearned income in the form of in-kind support and maintenance in the amount of $105 (the difference between the fair market rental value and the amount of rent she actually paid). *Id.* The Seventh Circuit reversed after examining the economic reality of Jackson's situation. The court calculated that Jackson paid 77% of her total income as rent. The Seventh Circuit therefore reasoned that the marginal utility of a bargain on rent to a person who already devoted 77% of her actual income to that bargain rent was "far less than the excess of the market value over actual rent." *Id.* at 1082. The court therefore vacated the SSA's decision and remanded the case to the district court to instruct the SSA to either change his interpretation of the regulations or amend the regulations so that a recipient's unearned income from receiving shelter at prices below market value would be attributable to her only when "the unearned income represents additional resources available to the recipient (increased purchasing power) to meet his or her basic needs." *Id.* at 1087.

In response to the Seventh Circuit's opinion in *Jackson*, the SSA modified 20 C.F.R. 416.1130(b) to provide as follows:

In-kind support and maintenance means any food, clothing, or shelter that is given to you or that you receive because someone else pays for it.... You are not receiving in-kind support and maintenance in the form of room or rent if you are paying the amount charged under a business arrangement. A business arrangement exist when the amount of monthly rent required to be paid equals the current market rental values (see § 416.1101). *Exception:* In the States in the Seventh Circuit (Illinois, Indiana, and Wisconsin), a business arrangement exists when the amount of monthly rent required to be paid equals or exceeds the presumed maximum value described in § 416.1140(a)(1). In those States, if the required amount of rent is less than the presumed maximum value, we will impute as in-kind support and maintenance, the difference between the required amount of rent and either the presumed maximum value or the current market value, whichever is less.

 The crux of Plaintiff's arguments that the SSA breached its Article II, Section 3 Constitutional duty and violated his right to equal protection is based on the presumption that if the SSA applied this regulation as it is applied in the Seventh Circuit, his benefits would not have been reduced. Daniel, however, does not pay any amount of rent to his parents and there is no "business arrangement." Rather, the trustee pays $750 each month for Daniel's room and board. Thus, since Daniel has his rent paid by a third party, Daniel's situation is governed by 20 C.F.R. § 416.1103(g) and the economic benefit

test does not apply. *Ellis v. Apfel,* 147 F.3d 139 (2d Cir.1998) (payments made to plaintiff's landlord by a third-party were in-kind support and maintenance and thus reduced plaintiff's SSI benefits); *Kulungian v. Apfel,* 208 F.3d 203, 2000 WL 287730 (2d Cir.2000) (unpublished) (actual economic benefit test does not control the treatment of rental payments from a testamentary trust). Therefore, since the application of this regulation to Daniel would have no effect on his benefits, all of his arguments based upon the failure of the SSA to apply this regulation must fail.

### D. Plaintiff's Equal Protection argument comparing competent and incompetent SSI recipients

■ Finally, Plaintiff alleges as a cause of action in his complaint that Defendant violated "the Equal Protection Clause of the Constitution by denying the mentally incapacitated plaintiff SSI benefits which are provided to competent SSI recipients because the SSA Commissioner presumes the availability of resources under the jurisdiction of the State Court for which there has *not* been an order to distribute the funds for 'support and maintenance' which results in the denial of SSI benefits because a different standard is applied to incompetent SSI recipients than applied to competent SSI recipients." First, Plaintiff does not argue this point in his briefs and thus it is waived since this Court can only guess at its meaning. Moreover, it is clear that there *is* a state order to distribute funds for "support and maintenance" since Daniel's SNT specifically orders the disbursement of $750.00 each month for Daniel's room and board.

### II Commissioner's Cross–Motion for Judgment affirming the SSA's decision

■ The findings of the Commissioner as to any fact are conclusive if sup-

ported by "substantial evidence." 42 U.S.C. § 405(g) (2001). Thus, this Court may remand, modify, or reverse the SSA's final decision only if the SSA has misapplied the appropriate legal standard, or if the finding is not supported by substantial evidence. *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998) (*citing Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)). The Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

The sole issue to be decided by this motion concerns the computation of Daniel's SSI benefits. Defendant contends that it correctly determined that the disbursements from Daniel's Supplemental Needs Trust, which were used to pay his room and board, were chargeable income.

The SSI program provides monthly benefits to aged, blind, or disabled individuals whose income and resources do not exceed certain limits. 42 U.S.C. § 1382(a)(1). For the purpose of calculating benefits for eligible claimants, income is defined to include both earned and unearned income, and unearned income is defined to include "support and maintenance furnished in cash or in kind." *Id.* at 1382a(a); 1382a(a)(2)(A). The regulations define in-kind support and maintenance as "any food, clothing, or shelter that is given to you or that you receive because someone else pays for it." 20 C.F.R. § 416.1130(b). Shelter includes room and rent. *Id.* Further, while bills paid by a third party on behalf of an SSI recipient are not, in and of themselves, considered income, the value of anything the recipient receives as a

result of such payment is included in the recipient's income if what is received fits within the definition of in-kind income. 20 C.F.R. § 416.1103(g); *Ellis v. Apfel*, 147 F.3d 139, 141 (2d Cir.1998).

There are two methods for determining a SSI recipient's income. If the SSI recipient lives in the household of another person who provides both food and shelter, in-kind income is valued at one-third of the recipient's federal benefit rate, regardless of its actual value. 20 C.F.R. § 416.1130(c). In all other cases, SSA presumes that the in-kind income is worth a maximum value ("PMV"). This PMV equals one-third of the federal benefit rate plus the amount of the general income exclusion set forth in 20 C.F.R. § 416.1124(c)(12), or $20. An SSI recipient may rebut the presumption involved in calculating a PMV by showing that the actual value of in-kind support and maintenance is less than the PMV. 20 C.F.R. §§ 416.1130(c), 416.1140.

Here, it is undisputed that pursuant to a state court order, Daniel's parents receive on a monthly basis $750.00 for room and board from Daniel's SNT. Pursuant to the SSA's Program Operation Manual System, "[f]ood, clothing or shelter received as a result of disbursements from the trust by the trustee to a third party are income in the form of in-kind support and maintenance and are valued under the presumed maximum value (PMV) rule." POMS SI 01120.200(E)(1)(b). Accordingly, the SSA determined that the disbursements from Daniel's SNT for room and board are a third party payment for in-kind support and maintenance. The SSA thus reduced Daniel's SSI benefit under the one-third reduction rule.

Plaintiff contends that the disbursements should not have been deemed income since the disbursements were directed by the state court in accordance with the terms of the trust. Pursuant to Judge Rossetti's order, payments from the SNT were directed and authorized for room and board in the amount of $750.00. Further, Daniel's SNT specifically provided that all distributions are to "provide for the special needs of the beneficiary by furnishing those items of need not provided by government entitlements" and that "it is the intent of the Settlor to supplement rather than supplant, impair, or diminish government entitlements for which DANIEL HECHT may otherwise be eligible." Plaintiff concludes that since the disbursements were court-ordered and pursuant to the SNT, Daniel's benefits should not have been reduced.

■ In 1993, Congress created Supplemental Needs Trusts ("SNT"). 42 U.S.C. § 1396p(d)(4)(A). "A supplemental needs trust is a 'discretionary trust established for the benefit of a person with severe and chronic or persistent disability' and is intended to provide for expenses that assistance programs such as Medicaid do not cover." *Sullivan v. County of Suffolk*, 174 F.3d 282, 284 (2d Cir.1999). Under New York State law governing the establishment of SNTs, neither the principal nor income held in the SNT may be deemed an available resource under any program of government benefits or assistance. However, "actual distributions from the trust may be considered to be income or resources of the beneficiary to the extent provided by the terms of any such program." EPTL § 7–1.12(b)(3) (2000). Thus, Defendant may calculate disbursements from a SNT as unearned income without conflicting with the state law establishing the SNT. The fact that the trust itself may provide that its disbursements should not affect Daniel's SSI benefits is irrelevant. Rather, it appears that the state court judge may have authorized distributions in violation of the provisions of

the SNT. Further, this Court notes that Daniel's benefits would have been reduced by the one-third reduction rule even if Daniel received no disbursements from his SNT for room and board since he resides in his parents' household. 20 C.F.R. § 416.1131.

Plaintiff also argues that there are material issues of fact that require this Court to remand the case. Plaintiff contends that the issue of whether the disbursements should have been deemed income is a factual determination. There are no facts in dispute, however, and thus this is a question of law. Contrary to Plaintiff's assertion, the fact that the ALJ may have determined the issue differently than the appeals council does make this a factual dispute. It is a legal question and thus there is no basis for a remand.

### Conclusion

Based on the reasoning above set forth, Defendant's motion for judgment affirming the administrative decision of the Commissioner of Social Security Administration is GRANTED. Plaintiff's motion for a remand is DENIED.

The Clerk of Court is directed to enter judgment dismissing this complaint and to close the case.

SO ORDERED.